

**mwe.com**

Michael B. Kimberly
Attorney at Law
mkimberly@mwe.com
+1 202 756 8901

October 15, 2021

VIA ELECTRONIC FILING

Hon. Deborah K. Chasanow
U.S. District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

    Re:    *Chamber of Commerce v. Franchot*, No. 1:21-cv-410-DKC

Dear Judge Chasanow,

    We appreciate the Court's careful consideration of the applicable recusal rules and offer this letter in response to the Court's order of October 4, 2021.

    The order first directs the Internet Association, NetChoice, and Computer & Communications Industry Association, whose member lists are public (Am. Compl. ¶¶ 17, 19, 21), "to disclose which of those members are alleged to be harmed by the Act." Because the Act does not take effect until January 1, 2022 and first estimated payments under the Act are not due until April 15, 2022 (*see* Md. Tax-Gen. § 7.5-201(b)(1)), no member company has yet paid the Act's exaction. That said, Maryland Senate President Bill Ferguson stated an express intent to "target[]" a number of specific companies "that make over $100,000,000 a year," including "Amazon, Facebook, and Google" (*see* Dkt. 23-1, at ¶ 2 (citing perma.cc/699U-4BQB)), describing the exaction as a "mechanism to make sure big tech pays." Each of the identified companies is a member of the above-named plaintiffs, intends to sell digital advertising services in Maryland after January 1, 2022, and has global revenues in excess of the thresholds established by the Act. Each thus anticipates that the Comptroller will assess it liability under the Act after January 1, 2022. *See* Am. Compl. ¶¶ 17, 19, 21.

    We note, however, that in a lawsuit involving trade association plaintiffs, a judge's recusal obligation does not turn on harm, without more, to a member company in which the judge may hold stock. As the Court's order observes, the standard for recusal under these circumstances is established by Advisory Opinion 49 of the Committee on Codes of Conduct, which concludes that there is "no impropriety in a judge serving in a proceeding where a trade association appears as a party, even though the judge owns a small percentage of the publicly-traded shares of one or more members of the association, so long as that interest could not be *substantially affected* by the outcome of the proceeding." *See* 2B Guide to Judiciary Policy, Ch. 2, at 61 (emphasis added), perma.cc/3PDR-WQGH; *cf.* 4th Cir. Rule 26.1(a)(2)(D) (similar).

    Advisory Opinion 49 interprets Canon 3C(1)(c), which sets forth the standard for recusal based on a judge's financial interest in *any* non-party to a lawsuit, and not just companies that are members of trade-association plaintiffs. In a case involving a judge's ownership of stock in a non-party company,



500 North Capitol Street, NW Washington DC 20001-1531 Tel +1 202 756 8000 Fax +1 202 756 8087

*US practice conducted through McDermott Will & Emery LLP.*

relevant authorities indicate that recusal is warranted under Canon 3C(1)(c) and 28 U.S.C. § 455 only if the judge knows that the outcome of the proceeding could substantially affect, more specifically, the value of the company's stock. *See* Advisory Opinion 57, 2B Guide to Judiciary Policy, Ch. 2, at 75 (applying the standard whether the outcome would "substantially affect the value of the interest"); *see also* 4th Cir. Rule 26.1(a)(2)(D) (requiring disclosure of "any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding"). And because the touchstones in this circumstance are the judge's knowledge (28 U.S.C. § 455(b)(4)) and otherwise whether a judge's "impartiality might reasonably be questioned" (28 U.S.C. § 455(a)), courts have held that recusal is not warranted under the applicable standard unless the litigation's substantial effect on the judge's financial interest is "easily ascertainable." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 129 (2d Cir. 2003).

In the context of a general facial challenge to a state law like this, we respectfully submit that the impact of the litigation on the stock value of a third-party company is not reasonably ascertainable by the plaintiffs, for two reasons. First, the plaintiff associations lack detailed knowledge of their members' (or any other potentially affected company's) finances. Second, forward-looking statements concerning the impact on companies' stock values from of a facial challenge to a state law like this would turn on impossibly complex micro- and a macroeconomic analyses. *See generally* Nai-Fu Chen, et al., *Economic Forces and the Stock Market*, 59 Journal of Business 383 (1986). The complexity of those analyses would be compounded by the fact that Maryland comprises just 0.08% of the global population, requiring the plaintiff associations to isolate the impact of revenues derived by each company from that population subset on the overall performance of each company, globally.

Because such company-by-company economic studies are not practicable, we are unable to ascertain any member of IA, NetChoice, or CCIA whose stock value could be affected substantially by the outcome of this case.

Concerning the Chamber of Commerce of the United States of America, the Court's order states that the Chamber "is directed to disclose any member it can identify that would be significantly affected by the outcome of this litigation." For the same reasons that its co-plaintiffs cannot reasonably ascertain any such members, neither can the Chamber do so. In addition, the Chamber relies on the First Amendment to maintain the confidentiality of the identities of its members, which is critical to its institutional mission. As the Supreme Court recently explained, "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)). Because membership in a plaintiff association is not relevant to determining the likelihood of a potential stock-price impact resulting from this litigation, we respectfully submit that the conditions for compelled disclosure are not present here.

As the Court considers its recusal obligations, it may find *United States v. Stone*, 866 F.3d 219 (4th Cir. 2017), informative. That case involved a judge's entry of a restitution order in a criminal mortgage-fraud case. The defendant sought the judge's recusal on the ground that the judge owned stock in one of the defrauded banks that would receive funds under the restitution order. The Fourth



Circuit rejected the defendant's argument, holding that the impact of the restitution payment on the bank's share price was too speculative, and the district judge's interest was thus too "remote," to warrant recusal. *Id.* at 230; *accord United States v. Sellers*, 566 F.2d 884, 886-887 (4th Cir. 1977) (similar). In the context of a generalized facial challenge to a state law like this one, where downstream effects on stock values of potentially affected companies are unknowable, we submit that the same conclusion is warranted. *Cf. In re Kansas Public Retirement System*, 85 F.3d 1353, 1362 (8th Cir. 1996) ("[A] rule requiring judges to recuse themselves from all cases that might remotely affect nonparty companies in which they own stock . . . would paint with too broad a stroke.").

      I hope that the Court finds this letter responsive to its October 4, 2021 order and helpful as it considers these important issues.

Respectfully submitted,

