IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA, *et al.*,

        *Plaintiffs*,

v.

PETER FRANCHOT,

        *Defendant*.

No. 1:21-cv-410-LKG

**OPPOSITION TO DEFENDANT'S MOTION FOR A CONTINUANCE**

Plaintiffs respectfully oppose the State's motion for a continuance of the February 17, 2022, oral argument on the pending dispositive cross-motions.

**1.** Plaintiffs commenced this case nearly one year ago, on February 18, 2021. From the beginning, plaintiffs' counsel emphasized that time is of the essence. In first negotiating a briefing schedule, counsel explained that "it will be important to move the briefing forward at a pace that ensures that we can have a decision in time to settle certain practical, preliminary compliance issues sufficiently in advance of the effective date of the law." *See* Exhibit A (email dated 4/28/21). Because plaintiffs were agreeing to what they saw as a "generous" briefing schedule at the outset, counsel stressed that extensions of time and other delays should not be sought except "in truly exceptional circumstances" and certainly not "for mere convenience, such as 'press of business.'" *Id.* (emails dated 4/27/21 and 4/28/21).

Despite this early understanding—and despite not yet having had a hearing on the merits one year on—counsel for the State now seeks at least a 30-day continuance of the oral argument on the pending motions because lawyers in the Maryland Attorney General's Office

1

are too busy defending the State's redrawing of its legislative districts. Such relief is unwarranted, and the Court should deny the motion.

**2.** The case has been ripe for a hearing on the parties' dispositive cross-motions for four months, since October 13, 2021. *See* Dkt. 47. The parties have filed six merits briefs that have extensively addressed the issues to be decided. With all of that work already completed, the time and effort needed to prepare for and attend a single hearing on a single afternoon will not be unduly burdensome. It is thus entirely reasonable for plaintiffs and the Court to expect the Maryland Attorney General's Office—which employs hundreds of attorneys and holds itself out as "the largest and finest law firm in the State" (perma.cc/HJ2D-PPH6)—to make arrangements for just one of its lawyers to appear before this Court on the afternoon of February 17 to present argument in this very important case. That is especially so because the State's initial response to the petitions in the redistricting litigation is due to the Maryland Court of Appeals a full two days beforehand, on February 15. *See* Motion ¶ 3.

The State's request for a continuance rests entirely on an assertion that the press of other business is placing "considerable demands on the resources of the Office of the Attorney General." Motion ¶ 4. While plaintiffs are sympathetic to the State's heavy caseload, generally being busy (even very busy) is not a sufficient justification for a 30-day-plus continuance of a long-scheduled hearing, particularly in a case when time is of the essence. An entire industry is awaiting clarity on the status of the statute at issue here so that companies operating in that industry can arrange their affairs accordingly.

**3.** If the Court determines that a continuance is nonetheless warranted, plaintiffs respectfully request that it be limited to a single extension of 14 days or less. The Court of Appeals' order contemplates that, after the filing of petitions on February 10 and the State's

initial response on February 15, a special master will establish a case-management schedule for extensive additional litigation, including dispositive motions, discovery, trial, briefing on findings of fact and conclusions of law, and subsequent exceptions and appeals. *See* Motion Ex. 2, at 3 ¶ 5. That process will be lengthy, measured in months, not days or weeks. Surely it would be more sensible—and more responsive to the State's asserted concern for resource allocation—to hold argument in this case *before* the more burdensome and lengthy stages of the redistricting litigation kick into high gear. It also would avoid additional prejudice to the plaintiffs, who already have waited a full year for a hearing on their claims.

At the same time, if the Court grants a limited continuance of around 14 days, plaintiffs respectfully request that it not schedule the hearing for February 22, 2022, or March 10, 2022. Lead counsel for plaintiffs has oral arguments scheduled on those dates in *Denezpi v. United States* (S. Ct. No. 20-7622) and *Medicaid & Medicare Advantage Products Association v. Emanuelli-Hernandez* (1st Cir. No. 21-1297).

In sum, the Court should deny the motion. If the Court grants any relief, it should be a single continuance of 14 days or less. In all events, we respectfully ask that the Court not set a hearing for February 22, 2022, or March 10, 2022.

Dated: February 2, 2022

Tara S. Morrissey*
  *U.S. Chamber Litigation Center*
  *1615 H Street NW*
  *Washington, DC 20062*
  *tmorrissey@uschamber.com*
  *(202) 463-5337*

*Attorney for the Chamber of Commerce of the United States of America*

*\* admitted pro hac vice*

Respectfully submitted,

/s/ *Michael B. Kimberly*

Michael B. Kimberly (No. 19086)
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *mkimberly@mwe.com*
  *(202) 756-8000*

*Attorney for All Plaintiffs*

**EXHIBIT A**

**Kimberly, Michael**

| | |
|---|---|
| **From:** | Sullivan, Steven <ssullivan@oag.state.md.us> |
| **Sent:** | Wednesday, April 28, 2021 2:12 PM |
| **To:** | Kimberly, Michael |
| **Subject:** | RE: Chamber v. Franchot (D Md 1:21-cv-410) -- scheduling proposal |

Michael,

Your suggestions as to joint status report sound reasonable to me.  We wouldn't seek an extension unless there were a legitimate need.  Since the passage of Senate Bill 787 clarified that the tax will not take effect this year, there will be sufficient time for the Court to rule on the parties' motions.

As for page limits, I expect that once we've had a chance to consider the amended complaint, we will be able to reach agreement, based on the "combined page limits" understanding of the Local Rule as you've described.

I can draft a status report/stipulation and send it to you for review.  I presume we want this to be a short document.

Steve

---

**From:** Kimberly, Michael <Mkimberly@mwe.com>
**Sent:** Wednesday, April 28, 2021 8:25 AM
**To:** Sullivan, Steven <ssullivan@oag.state.md.us>
**Subject:** RE: Chamber v. Franchot (D Md 1:21-cv-410) -- scheduling proposal

Thanks, Steve. Responses below.

**Schedule.** It sounds like we are agreed on the dates, which I appreciate. From our perspective, it will be important to move the briefing forward at a pace that ensures that we can have a decision in time to settle certain practical, preliminary compliance issues sufficiently in advance of the effective date of the law. My point about subsequent extensions to the agreed schedule is only to say that, for us, there will be a strong presumption against consenting to extensions for mere convenience, such as "press of business" or personal vacation time. If unanticipated and extenuating circumstances arise, we will of course be accommodating as decorum requires. But absent such circumstances, it is important to us to respect the agreed schedule. I don't think this is something we necessarily need to commit to writing in the joint stipulation, and if you are generally on the same page (you stated that you "do not anticipate seeking extensions," so I think you may be), we are comfortable simply stating the agreed schedule and leaving it at that. But if you have a different view and feel that it's important to leave open the door for brief-by-brief extensions on routine grounds like "press of business," then I propose we report the agreed schedule to the judge and follow it with short statements of our respective understandings concerning the schedule, for the judge's consideration.

**Page limits.** I understand your position concerning the need for additional time and context before being able to take a position on the need (or not) for additional pages. That said, I think page limits will be on the judge's mind, given that Local Rule 105.3 doesn't address the length of consolidated briefs on cross-motions. Perhaps we can agree to state that it is the parties' understanding that consolidated briefs have pages limits equal to the combined page limits of the constituent parts of the consolidated brief and that the parties reserve the right to seek enlargements of those page limits at a later time, as circumstances may warrant. On that score, I'd like, if we can, to avoid brief-by-brief motions for enlargements of page limits and hope we will be able to

1

agree to a global joint motion to adjust page limits after the amended complaint has been filed. I don't think that's unusual in cases involving cross-motions like this; it would reduce the burden on the judge while also ensuring parity in overall page allocations. But we can cross that bridge when we come to it.

How would you like to proceed? Would you like to put together a draft of the joint stipulation?

Best,
Michael

---
**Michael B. Kimberly**
**McDermott Will & Emery LLP**
**Office** (202) 756 8901
**Mobile** (267) 269-0381

**From:** Sullivan, Steven <ssullivan@oag.state.md.us>
**Sent:** Tuesday, April 27, 2021 6:54 PM
**To:** Kimberly, Michael <Mkimberly@mwe.com>
**Subject:** RE: Chamber v. Franchot (D Md 1:21-cv-410) -- scheduling proposal

[ External Email ]
Michael,

We are o.k. with the timing in the schedule you propose, except if the amended complaint is filed April 30, then 45 days from that date would have our motion to dismiss due June 15, rather than June 14.

We do not anticipate seeking extensions, but if either party finds itself needing to request an extension of time, we think the "good cause" standard in Fed. R. Civ. P. 6(b)(1) is the appropriate one, supplemented, of course, with each party's willingness to consent to a reasonable request for extension.  If the pandemic has taught us anything, it is that none of us can know whether or when circumstances will throw our schedules into disarray, and after the strangeness of what courts have gone through and continue to experience with COVID-19, it is difficult to imagine what would constitute "truly exceptional circumstances."

As for the proposed page limits, we won't know whether we'll need additional pages for our motion to dismiss until we've seen the amended complaint and are able to gauge whether additional pages are needed.  I would not be surprised if we needed more than 35 pages, but I can't yet say for sure.  Similarly, we cannot at this time predict whether we might need additional pages for a response to plaintiffs' motion for summary judgment and our reply in support of our motion to dismiss.  We think it better to start with the presumption that the parties can abide by the page limits in Local Rule 105.3, then if during drafting a party finds a need for additional pages, a motion to exceed the page limit could be filed.  My understanding is that Judge Chasanow tends to be reasonable with such requests.

For purposes of the joint status report, then, our preference is that its proposal be limited to scheduling, with the dates plaintiffs have proposed (except substituting June 15 instead of June 14 for the motion to dismiss).

Please let me know if this will work for plaintiffs.

Thanks

Steve

**From:** Kimberly, Michael <Mkimberly@mwe.com>
**Sent:** Tuesday, April 27, 2021 9:08 AM
**To:** Sullivan, Steven <ssullivan@oag.state.md.us>
**Subject:** Chamber v. Franchot (D Md 1:21-cv-410) -- scheduling proposal

Steve,

We owe Judge Chasanow a joint status report by this Friday, laying out a proposed schedule for our forthcoming cross-motions.

We are planning to file an amended complaint soon, currently on April 30, at the same time as the status report. On the matter of schedule and timing, I wanted to open by proposing 45-day intervals for our cross motions, with 30 days for our final reply. In making this offer, my idea is to set generous timeframes from the outset and in turn to agree not to seek subsequent extensions except in truly exceptional circumstances.

I think we should also propose modified page limits. By default, we have 35 pages for principal briefs and 20 pages for replies. If we moved simultaneously, we'd be entitled to 90 pages each (two principal briefs and one reply), but I think staged cross-motions make better sense, particularly given that I expect there will be overlapping issues. I propose that we each have 75 pages total rather than 90 (recognizing the efficiencies of staged briefing), divided as follows:

| | |
|---|---|
| State's motion to dismiss: | June 14 – 35 pages |
| Plaintiffs' opp. to MTD & cross-MSJ: | July 29 – 50 pages |
| State's reply on MTD & opp. to cross-MSJ: | Sept 13 – 40 pages |
| Plaintiffs' reply on cross-MSJ: | Oct. 13 – 25 pages |

The dates assume we'll file our amended complaint this Friday, which I'll be able to confirm before the status report is due. If that date slips, we can express the schedule in terms of days allowed (45 days for principal briefs, 30 days for plaintiffs' final reply) rather than dates certain.

How does this sound to you? Please let me know if/when you'd like to discuss.

Best,
Michael

---
**Michael B. Kimberly**
Partner
**McDermott Will & Emery LLP**
500 North Capitol Street, NW, Washington, DC 20001
**Office** (202) 756 8901   **Mobile** (267) 269-0381
Bio | Website | vCard | Twitter | LinkedIn


****************************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a

3

law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our [Privacy Policy](#) explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit <http://www.mwe.com/> for more information about our Firm.