IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No. 21-cv-00410-LKG |
| v. | ) Dated: March 30, 2022 |
| PETER FRANCHOT, *et al.*, | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER[1]

## I.   INTRODUCTION

This case involves statutory and constitutional law challenges to the State of Maryland's Digital Ad Tax Act, 2021 Md. Laws ch. 37, codified at Title 7.5 of the Tax-General Article, (the "DATA") brought by four trade associations who have members who will be liable for the charge imposed by this statute. *See generally* Am. Compl., ECF No. 25. Defendant has moved to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for several reasons, including that plaintiffs' claims are jurisdictionally precluded by the Tax Injunction Act, 28 U.S.C. § 1341, and principles of tax comity. Def. Mot., ECF No. 29; Def. Mem., ECF No. 29-1. Plaintiffs have also moved for summary judgment in their favor on issues related to their statutory and constitutional law claims. Pl. Mot., ECF No. 31; Pl. Mem., ECF No. 31-1. For the reasons set forth below, the Court **GRANTS-in-PART** and **DENIES-in-PART** defendant's motion to dismiss.

---

[1] The Court vacates its prior Memorandum Opinion and Order, dated March 4, 2022. *See* ECF No. 66.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Factual Background

In this civil action, plaintiffs, the Chamber of Commerce of the United States of America, the Internet Association, NetChoice and the Computer & Communications Industry Association, bring statutory and constitutional law challenges to the State of Maryland's Digital Ad Tax Act, or "DATA." *See generally* Am. Compl. Specifically, plaintiffs allege in Counts I, II and III of the amended complaint that the DATA: (1) violates the Internet Tax Freedom Act, 47 U.S.C. § 151 (Count I); (2) violates the Commerce Clause (Count II); and (3) violates the Due Process Clause (Count III). *See id.* at ¶¶ 76-93. In addition, plaintiffs allege in Count IV of the amended complaint that the DATA's provision that prohibits passing on the costs of the DATA's charge violates the Commerce Clause and the First Amendment. *Id.* at ¶¶ 94-96.

The Maryland Digital Ad Tax Act

As background, the DATA imposes a charge on a business's annual gross revenues derived from digital advertising services provided in the State of Maryland, if the business has at least $100 million in global annual gross revenues. *See* Md. Code Ann., Tax-Gen. §§ 7.5-102 to -103. Under the DATA, "'[d]igital advertising services' include[] advertisement services on a digital interface, including advertisements in the form of banner advertising, search engine advertising, interstitial advertising, and other comparable advertising services." *Id*. at § 7.5-101(e)(1).

The tax rate under the DATA is graduated in increments of 2.5%, from 2.5% to 10%, based upon the global annual gross revenues of the business. *See* Md. Code Ann., Tax-Gen. § 7.5-103.[3] In addition, the DATA requires that "[t]he Comptroller . . . adopt regulations that

---

[2] The facts recited in this Memorandum Opinion and Order are taken from the amended complaint ("Am. Compl."); defendant's motion to dismiss ("Def. Mot.") and memorandum in support thereof ("Def. Mem."); plaintiffs' response in opposition to defendant's motion to dismiss and motion for summary judgment ("Pl. Mot."); and memorandum in support thereof ("Pl. Mem.").

[3] The DATA provides that the "assessable base" is the business's "annual gross revenues derived from digital advertising services in the State [of Maryland]." *See* Md. Code Ann., Tax-Gen. § 7.5-101(c). The statute also provides that the assessable base is determined by using an apportionment fraction, based upon the annual gross revenues of the business derived from digital advertising services in Maryland (the numerator) and in the United States (the denominator). *Id*. at § 7.5-102(b)(1).

determine the state from which revenues from digital advertising services are derived." *Id*. at § 7.5-102(b)(2).

In 2021, the Maryland General Assembly adopted certain amendments to the DATA, which: (1) exclude advertising services on digital interfaces owned or operated by a broadcast entity, or news media entity and (2) prohibit a covered taxpayer from directly passing on the cost of the digital ad tax to a purchaser of digital advertising services. *See* 2021 Md. Laws ch. 669, § 1 (S.B. 787) (amending Md. Code Ann., Tax-Gen. §§ 7.5-101 to -102). The so-called "pass-through" prohibition in the DATA, as amended, provides that: "[a] person who derives gross revenues from digital advertising services in the State may not directly pass on the cost of the tax imposed under this section to a customer who purchases the digital advertising services by means of a separate fee, surcharge, or line-item." *See* Md. Code Ann., Tax-Gen. § 7.5-102(c).

The proceeds collected via the DATA's charge are distributed to the Blueprint for Maryland's Future Fund. *See* Md. Code Ann., Tax-Gen. § 2-4A-02. This fund is used to pay for a comprehensive package of improvements that are intended to "transform Maryland's education system to world-class student achievement levels." *See* Md. Code Ann., Educ. § 1-301(a).

<u>Methods For Challenging A Tax Under Maryland Law</u>

Maryland law affords two methods for a taxpayer to raise an objection to a tax, including a state or federal constitutional challenge.

First, the so-called "post-deprivation remedy" allows a taxpayer to first pay the disputed tax and then seek a refund. *See* Md. Code Ann., Tax-Gen. § 13-901(a) ("A claim for refund may be filed with the tax collector who collects the tax, fee, or charge by a claimant who: (1) erroneously pays to the State a greater amount of tax, fee, charge, interest, or penalty than is properly and legally payable; [or] (2) pays to the State a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner."). If a post-deprivation remedy is pursued, the Comptroller will "(1) investigate each claim for refund; and (2) conduct a hearing at the request of the claimant prior to a final determination on the claim." *See id*. at § 13-904(a).

Thereafter, the Comptroller issues a notice of "the determination of the claim for refund." *Id*. at § 13-904(b). Maryland law also provides that, if the taxpayer disagrees with the

Comptroller's determination, or if the Comptroller does not issue its determination within six months after filing the claim, the taxpayer can appeal to the Maryland Tax Court. *Id*. at § 13-510(a)(6) ("[W]ithin 30 days after the date on which a notice is mailed, a person or governmental unit that is aggrieved by the action in the notice may appeal to the Tax Court from: . . . (6) a disallowance of a claim for refund under § 13-904 of this title."); *id*. at § 13-510(b) ("If a tax collector does not make a determination on a claim for refund within 6 months after the claim is filed, the claimant may: (1) consider the claim as being disallowed; and (2) appeal the disallowance to the Tax Court.").

A second option is for a taxpayer to pursue the so-called "pre-deprivation remedy" under Maryland law, which allows a taxpayer to challenge a tax before paying the tax. *Id*. at § 13-401 ("[I]f a tax collector examines or audits a return and determines that the tax due exceeds the amount shown on the return, the tax collector shall assess the deficiency."). This remedy is available if the Comptroller determines that a taxpayer did not pay tax that was due and issues an assessment. *Id*. A taxpayer may choose to contest such an assessment by filing an appeal directly with the Maryland Tax Court. *Id*. at § 13-510(a)(1) ("[W]ithin 30 days after the date on which a notice is mailed, a person or governmental unit that is aggrieved by the action in the notice may appeal to the Tax Court from: (1) a final assessment of tax, interest, or penalty under this article[.]"); *see also Comptroller v. Phillips*, 865 A.2d 590, 594 n.5 (Md. 2005) ("§ 13–510(a)(1) of the Tax–General Article authorizes a person aggrieved by a tax assessment to appeal to the Tax Court.").

In this regard, Maryland law provides that "[t]he [Maryland] Tax Court shall have full power to hear, try, determine, or remand any matter before it" and that the Maryland Tax Court "may reassess or reclassify, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed to the Tax Court." Md. Code Ann., Tax-Gen § 13-528(a). The Maryland Tax Court can also abate penalties and interest on an assessment. *See, e.g.*, *Frey v. Comptroller*, 29 A.3d 475, 519 (Md. 2011) (stating that the Maryland Tax Court is authorized to abate assessed interest for "reasonable cause" or "an obvious error").

Lastly, Maryland law provides for judicial review of the determinations of the Maryland Tax Court to the Circuit Court of Maryland in both pre-deprivation and post-deprivation cases. Md. Code Ann., Tax-Gen. § 13-532(a)(2). A judgment of the Circuit Court of Maryland is also

4

appealable by right to Maryland's Court of Special Appeals, with discretionary review by the Maryland Court of Appeals available via writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301, 12-307 and 12-308.

### B. Procedural Background

Plaintiffs commenced this action on February 18, 2021. *See* Compl., ECF No. 1. On April 30, 2021, plaintiffs filed an amended complaint. *See* Am. Compl.

On June 15, 2021, defendant filed a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and a memorandum in support thereof. *See* Def. Mot; Def. Mem. On July 29, 2021, plaintiffs filed a response in opposition to defendant's motion to dismiss and a motion for summary judgment, pursuant to Fed. R. Civ. P. 56. *See* Pl. Mot.; Pl. Mem.

On September 13, 2021 defendant filed a reply in support of his motion to dismiss and a response in opposition to plaintiffs' motion for summary judgment. *See* Def. Resp., ECF No. 36. Plaintiffs filed a reply in support of their motion for summary judgment on October 13, 2021. *See* Pl. Reply, ECF No. 47.

On November 19, 2021 defendant filed a supplemental brief on the applicability of the Tax Injunction Act to plaintiffs' claims. *See* Def. Supp. Br., ECF No. 56. On December 13, 2021, plaintiffs filed a responsive supplemental brief on this jurisdictional issue. *See* Pl. Supp. Br., ECF No. 57. On February 17, 2022, the Court held oral argument on this jurisdictional issue.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is a challenge to the Court's "competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The United States Supreme Court has explained that subject-matter jurisdiction is a "threshold matter" that is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L.M.R. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). And so, an objection that the Court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own

initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The United States Court of Appeals for the Fourth Circuit has also explained that the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F. 3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). And so, if plaintiffs "fail[] to allege facts upon which the court may base jurisdiction," the Court should grant a motion to dismiss for lack of subject-matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799.

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### C. Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, the Court may grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is

"material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute is "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). But, the Court may rely only on facts supported in the record. *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings. *See id.*

### D. The Tax Injunction Act

Lastly, the Tax Injunction Act, 28 U.S.C. § 1341, ("TIA") provides that federal courts lack subject-matter jurisdiction to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. And so, the TIA is a jurisdictional bar that is not subject to waiver. *Clear Channel Outdoor v. Mayor and City Council*, 153 F. Supp. 3d 865, 870 (D. Md. 2015); *see also Brittingham 62, LLC v. Somerset Cty. Sanitary Dist., Inc.*, No. 12–3104, 2013 WL 398098, at *3 (D. Md. Jan. 31, 2013) (quoting *Antosh v. City of Coll. Park*, 341 F. Supp. 2d 565, 568 (D. Md. 2004)).

The United States Court of Appeals for the Fourth Circuit has also held that, when considering whether the TIA bars a federal challenge to a charge imposed by a state or local government, the Court must resolve two issues: (1) whether a plain, speedy, and efficient remedy exists in state court and (2) whether the charge is a tax or a fee. *Collins Holding Corp. v. Jasper Cty.*, 123 F.3d 797, 799 (4th Cir.1997). The question of whether a "plain, speedy, and efficient remedy" exists in state court turns on whether the available state court remedies meet certain procedural criteria. *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981). Given this, a state-court remedy is plain, speedy and efficient only if it provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax. *Collins Holding Corp.*, 123 F.3d at 800 (quoting *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982)). In this regard, the Fourth Circuit has held that "the fact that a taxpayer must either pay a tax or post a bond prior to challenging the state tax assessment does not render the state's remedy outside the scope of the Tax Injunction Act." *Id*. (quoting *Int'l*

7

*Lotto Fund v. Va. State Lottery Dep't*, 20 F.3d 589, 593 (4th Cir. 1994)). And so, the "plain, speedy and efficient" remedy inquiry "involves an examination of state law to determine whether a taxpayer who follows the proper channels can receive adequate judicial review under state law." *Id*. at 800.

Relevant to this case, the Fourth Circuit has previously recognized that "[t]he Maryland legislature established 'a comprehensive remedial scheme for the refund of taxes erroneously paid.'" *Gwozdz v. HealthPort Techs., LLC*, 846 F.3d 738, 740 (4th Cir. 2017) (quoting *White v. Prince George's Cty.*, 282 Md. 641, 648 (Md. 1978)). Specifically, the Fourth Circuit observed in *Gwozdz* that a taxpayer can begin by requesting reimbursement from the Comptroller, the taxpayer may request an informal hearing and may appeal the Comptroller's final determination to the Maryland Tax Court, and a dissatisfied taxpayer may appeal the Tax Court's decision to the Circuit Court of Maryland. *Id*. at 740-41. The Fourth Circuit also observed in *Gwozdz* that this administrative remedy encompasses "every type of tax, fee, or charge improperly collected by a Maryland governmental entity," and that Maryland courts have uniformly held that the administrative remedy is a taxpayer's sole route to relief. *Id*. at 741. (citing *Brutus 630, LLC v. Town of Bel Air*, 448 Md. 355, 372 (Md. 2016) (emphasis omitted) (quoting *Bowman v. Goad*, 348 Md. 199, 203 (Md. 1997)). Given this, the Fourth Circuit has held that the fact that the remedy for challenging a tax in Maryland is initially an administrative one, "does not place it outside the TIA's purview." *Id*.

In addition, this Court has recognized that the "nebulous line between tax and fee is determined by federal law." *Brittingham*, 2013 WL 398098, at *3 (citing *Folio*, 134 F.3d at 1217); *Clear Channel*, 153 F. Supp. 3d at 870. Given this, the Court should assess "whether the charge is for revenue raising purposes, making it a 'tax,' or for regulatory or punitive purposes, making it a 'fee,'" when considering whether a particular charge is a tax or a fee. *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000). "The 'classic tax' is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large." *Id*. at 134 (citing *San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n*, 967 F.2d 683, 685 (1st Cir. 1992) . By comparison, "[t]he 'classic fee' is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise 'money placed in a special fund to defray the agency's regulation-related expenses.'" *Id*. (quoting *San Juan Cellular*, 967 F.2d at 685).

The Fourth Circuit has developed a three-prong inquiry to aid the Court in determining where a particular charge falls on the spectrum between a classic tax and a classic fee. Notably, the Court considers: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." *Id.* In this regard, the Fourth Circuit has held that a charge is more likely to be a tax if it is imposed by the legislature rather than an administrative agency. *See id.*; *Norfolk S. Ry. Co. v. City of Roanoke*, 916 F.3d. 315, 319 (4th Cir. 2019). A charge is also more likely to be a tax if it is imposed on a broad segment of the public, or if its primary purpose is to raise revenue for general government activity that benefits the entire community. *See Norfolk S. Ry. Co.*, 916 F.3d. at 319-320 (citing *GenOn Mid-Atl., LLC v. Montgomery Cty.*, 650 F.3d 1021, 1024 (4th Cir. 2011)). Because the characteristics of a charge will often place it somewhere between a classic fee and a classic tax, the Fourth Circuit has also recognized that this three-pronged inquiry often yields an ambiguous result. *Valero*, 205 F.3d at 134. Under such circumstances, the question of the purposes served with the funds collected by the charge becomes the most important factor in the Court's assessment. *See DIRECTV, Inc. v. Tolson*, 513 F.3d 119, 125 (4th Cir. 2008); *see also Club Ass'n of W. Va., Inc. v. Wise*, 156 F. Supp. 2d 599, 614 (D. Md. 2001).

## IV.   LEGAL ANALYSIS

Defendant has moved to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(1) and (6) upon the following seven grounds: (1) plaintiffs' claims are not ripe; (2) the TIA precludes federal court jurisdiction over plaintiffs' challenges to the DATA; (3) principles of tax comity warrant dismissal of this case; (4) plaintiffs do not have a private right of action to enforce the Internet Tax Freedom Act ("ITFA"); (5) the ITFA does not preempt the DATA; (6) the DATA does not violate the Commerce Clause; and (7) the pass-through prohibition provision of the DATA does not violate the Due Process Clause, Commerce Clause, or First Amendment. *See generally* Def. Mem.

Plaintiffs counter in their response in opposition to defendant's motion to dismiss that the Court may consider this matter, because their claims in this action are ripe and these claims are not jurisdictionally precluded by the TIA, or principles of tax comity. Pl. Mem. at 11-38. In addition, plaintiffs argue in their motion for summary judgment that the undisputed material facts

9

in this case show that they are entitled to judgment as a matter of law with regards to their statutory and constitutional law claims. *Id.* at 38-61. And so, plaintiffs request that the Court deny defendant's motion to dismiss and grant their motion for summary judgment. *Id.* at 61.

For the reasons that follow, the TIA bars plaintiffs' challenge to the charge imposed by the DATA, because this charge is a tax and Maryland law provides a plain, speedy and efficient remedy for plaintiffs to challenge this tax in state court. The TIA does not, however, preclude plaintiffs' challenge to the DATA's pass-through prohibition provision, because this provision does not involve the "assessment, levy or collection" of a tax. *See* Pl. Mem. at 2. And so, the Court **GRANTS-in-PART and DENIES-in-PART** defendant's motion to dismiss and **DISMISSES** Counts I, II and III of the amended complaint.

### A. Plaintiffs' Claims Are Ripe For Judicial Review

As a preliminary matter, to the extent that defendant continues to argue that plaintiffs' claims are not ripe, because the Comptroller has not issued regulations to implement the DATA, this argument must fail. Def. Mem. at 8-10; Def. Reply at 1-4. The Comptroller issued regulations implementing the DATA on December 13, 2021. *See* Md. Code Regs. 03.12.01.01 to .06. And so, plaintiffs' claims are ripe for review by this Court.

### B. The TIA Bars Plaintiffs' Claims

Turning to substance of defendant's motion to dismiss, the parties agree that the question of whether the TIA jurisdictionally bars plaintiffs' challenge to the DATA is a threshold issue that the Court should resolve before considering their other arguments in this case. *See* Def. Mem. at 10-12; Pl. Mem. at 1-3. And so, the Court begins its analysis by considering whether the jurisdictional bar in the TIA precludes plaintiffs' statutory and constitutional law claims in this case.

A careful review of the plain language of the DATA and the relevant case law shows that the charge imposed by this statute is a tax and that Maryland law provides a plain, speedy and efficient remedy for plaintiffs to challenge this tax in state court. Given this, the Court must DISMISS Counts I, II and III of the amended complaint for lack of subject-matter jurisdiction, pursuant to the TIA.

10

### 1. The DATA's Charge Is A Tax

A plain reading of the DATA makes clear that the charge imposed by this statute is a tax for TIA purposes. Because the parties disagree about the proper legal framework for the Court's analysis in determining whether the charge imposed by the DATA is a tax or a penalty, the Court briefly addresses this issue. *Compare* Def. Mem. at 12-19, *with* Pl. Mem. at 21-29.

The Fourth Circuit has long held that the Court considers three factors to determine whether a charge is a tax or a penalty for TIA purposes, namely: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." *Valero,* 205 F.3d at 134; *see also Norfolk S. Ry. Co.*, 916 F.3d. at 319. Defendant argues without persuasion in this case that the Fourth Circuit set aside this well-established test in *Liberty University v. Lew*, 733 F.3d 72 (4th Cir. 2013).[4] *See* Def. Supp. Br. at 7-8. But, as plaintiffs correctly note, the Fourth Circuit and this Court have continued to apply the three-factor *Valero* framework to determine whether a charge is a tax or penalty in the years since the Fourth Circuit decided *Liberty University. See, e.g.*, *Norfolk S. Ry. Co.*, 916 F.3d at 319-22; *see also Clear Channel*, 153 F. Supp. 3d at 871-85. Given this, *Valero* remains good law and provides the appropriate framework for the Court's analysis in this case.

Applying this legal framework here, the Court concludes that the charge in the DATA is a tax for several reasons. First, the initial factor that the Court considers under *Valero*—what entity imposes the charge—supports finding that the DATA's charge is a tax. The text of the DATA makes clear that the Maryland General Assembly enacted this statute and imposes the DATA's charge. *See* Md. Code Ann., Tax-Gen. §§ 7.5-101 to -301. The Fourth Circuit has recognized on several occasions that a charge is more likely to be a tax if it is imposed by the legislature, which is the case here. *See id.*; *see also Valero*, 205 F.3d at 134; *Norfolk S. Ry. Co.*,

---

[4] *Liberty University* involves a challenge to the Patient Protection and Affordable Care Act's ("ACA") employer mandate under, among other things, the Anti-Injunction Act ("AIA"). *See Liberty Univ.*, 733 F.3d at 87-89. The Court reads *Liberty University* to provide additional factors that the Court may consider when assessing the purposes served by the use of the monies obtained by the charge under prong three of the *Valero* test. *See id.* at 96 (noting that the "essential feature" of any tax is that "it produces at least some revenue for the Government," and "the absence of a scienter requirement, collection by the [IRS] through the normal means of taxation, and the absence of negative legal consequences beyond requiring payment to the [IRS]," are additional characteristics indicative of a tax rather than a fee).

916 F.3d. at 319. And so, prong one of *Valero* weighs in favor of finding that the DATA's charge is a tax, rather than a penalty.

The second factor that the Court considers under *Valero*—what population is subject to the charge—also weighs in favor of finding that the charge imposed by the DATA is a tax. In *Norfolk S. Ry. Co.*, the Fourth Circuit explained that "a charge is more likely to be a tax if it is imposed on a broad segment of the public." *See Norfolk S. Ry. Co.*, 916 F.3d at 319 (citing *GenOn*, 650 F.3d at 1024; *but see GenOn*, 650 F.3d at 1024 (finding that the carbon emission charge at issue was a fee because "the burden [of the charge] falls on GenOn alone"). In this case, the text of the DATA makes clear that this statute imposes a charge on any business that has annual gross revenues derived from digital advertising services provided in the State of Maryland, if that business has at least $100 million in global annual gross revenues. *See* Md. Code Ann., Tax-Gen. §§ 7.5-102 to -103. Given this, there can be no genuine dispute that many companies, including many of plaintiffs' members in this case, will be liable for the charge imposed by the DATA. *See* Am. Compl. at ¶¶ 15, 17, 19, 21 (alleging that "many" of the members of plaintiff organizations "will be liable to pay the charge imposed by the Act"). And so, the second factor that the Court considers under *Valero* also suggests that the DATA's charge is a tax. *See Norfolk S. Ry. Co.*, 916 F.3d at 319; *see also Club Ass'n*, 156 F. Supp. 2d at 614 (D. Md. 2001) (finding that the charge imposed by West Virginia's Limited Video Lottery Act was a tax, despite applying only to those persons seeking a license under the act).

*Valero's* third factor—the purposes served by the use of the monies obtained by the charge—similarly weighs in favor of finding that the DATA is a tax in this case. Again, the plain text of the DATA makes clear that the primary purpose of the charge imposed by this statute is to raise revenue for general government activity that will benefit the entire community. *See* Md. Code Ann., Tax-Gen. §§ 2-4A-02. Notably, it is undisputed that the funds collected from the charge imposed by the DATA will be used by the State of Maryland to fund educational improvements for the general welfare through the Blueprint for Maryland Fund. *See* Def. Mem. at 21; Pl. Mem. at 26-28. Defendant explains that this fund will support the transformation of "Maryland's education system to world-class student achievement levels." *See* Md. Code Ann., Educ. § 1-301(a); *see also* Tr. at 8:05-8:13. And so, the purpose served by funds collected pursuant to the DATA will promote the general welfare and benefit the general population in the

12

State of Maryland. *See* Md. Code Ann., Tax-Gen. §§ 2-4A-01 to -02; *see also* Md. Code Ann., Educ. § 1-301(a);

Several other important facts about the DATA also show that the charge imposed by this statute is a tax rather than a penalty. For example, there is no dispute in this case that the DATA will produce some revenue. *See* Md. Code Ann., Tax-Gen. § 7.5-102; *see also Liberty Univ.*, 733 F.3d at 96. The text of the DATA also makes clear that charge imposed under this statute is not dependent upon a scienter requirement, or any unlawful conduct. Md. Code Ann., Tax-Gen. § 7.5-102(a); *see also Liberty Univ.*, 733 F.3d at 96. Rather, the DATA provides that the amount of tax imposed will depend upon the amount of the annual gross revenues of a particular business. Md. Code Ann., Tax-Gen. § 7.5-102(a).[5]

Plaintiffs' argument that the DATA must be a penalty, because the charge imposed by this statute must be borne entirely by digital advertising companies, is also unpersuasive. Pl. Mem. at 24-25. Plaintiffs are correct that the DATA contains a pass-through prohibition that prohibits companies from directly passing on the cost of the digital ad tax to a purchaser of digital advertising services. Pl. Mem. at 25; *see also* Md. Code Ann., Tax-Gen. § 7.5-102(c). But, the Court does not agree with plaintiffs that this pass-through prohibition makes the DATA's charge a penalty.

### 2. Maryland Law Provides A Plain, Speedy And Efficient Remedy

Because the Court concludes that the charge imposed by the DATA is a tax for TIA purposes, the Court next considers whether Maryland law provides a plain, speedy and efficient remedy for plaintiffs to challenge this tax in state court. *See Collins Holding Corp.*, 123 F.3d at 799. As the Fourth Circuit has recognized on other occasions, Maryland law provides for such a

---

[5] The Court does not share defendant's view that there is a bright-line rule under Fourth Circuit precedent that a charge that does not address unlawful conduct cannot be a penalty. *See* Def. Mem. at 16-17. But, the Court agrees with defendant that the fact that the DATA does not address unlawful conduct weighs in favor of concluding that the charge imposed by this statute is a tax. Defendant also persuasively argues that the DATA is not akin to a penalty, because the Comptroller has no discretion regarding whether to make the charge, or to set the amount of the charge under the Act. *See id.* at 19-20; *see also* Md. Code Ann., Tax-Gen. §§ 7.5-101 to -103.

remedy. *See Gwozdz*, 846 F.3d at 740 (recognizing that the Maryland legislature established "a comprehensive remedial scheme for the refund of taxes erroneously paid").

Under Maryland law, plaintiffs and their members may challenge the charge imposed by the DATA by pursuing either a pre-deprivation or post-deprivation remedy. *See* Md. Code Ann., Tax-Gen. § 13-901(a) (post-deprivation); *id.* at § 13-401 (pre-deprivation); *id.* at § 13-528(a) (Tax Court appeal); *id.* at § 13-532 (judicial review). Specifically, Maryland's "pre-deprivation remedy" allows plaintiffs to challenge the DATA's charge before paying this tax, if the Comptroller determines that they did not pay the tax that was due and issues an assessment. *Id*. at § 13-401. Plaintiffs may also contest the charge by filing an appeal directly with the Maryland Tax Court. *Id*. at § 13-510(a)(1).

Alternatively, plaintiffs can pursue Maryland's "post-deprivation remedy," by first paying the DATA's charge and then seeking a refund. *See id.* at § 13-901(a). Maryland law makes clear that, if a post-deprivation remedy is pursued, the Comptroller will "(1) investigate each claim for refund and (2) conduct a hearing at the request of the claimant prior to a final determination on the claim," before issuing a notice of determination of the refund claim. *See id*. at § 13-904(a)-(b). Again, plaintiffs can appeal any unfavorable decision to the Maryland Tax Court. *Id*. at § 13-510(a)(6).

Maryland law also provides for additional judicial review of the determinations of the Maryland Tax Court for both pre-deprivation and post-deprivation remedies. *Id.* at § 13-532(a)(2); *see* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301, 12-307, 12-308. And so, as the Fourth Circuit has recognized, "[t]he Maryland legislature established 'a comprehensive remedial scheme for the refund of taxes erroneously paid'" and that the fact that this remedy is initially an administrative one "does not place it outside the TIA's purview." *Gwozdz*, 846 F.3d at 740 (quoting *White v. Prince George's Cty.*, 387 A.2d 260, 264 (1978)).

Plaintiffs' arguments that their remedy for challenging the charge imposed by the DATA under Maryland law is not efficient are also not persuasive. Plaintiffs first argue that Maryland law does not provide for meaningful pre-deprivation remedy in this case, because their members will be forced to pursue this remedy at the risk of incurring penalties and interest, and possible criminal liability. Pl. Reply at 10-11. But, to the extent that this would be the case, plaintiffs acknowledge, as they must, that Maryland law provides for a post-deprivation remedy that would

not pose such risks.  *See id.* (conceding that Maryland has a post-deprivation scheme of judicial review).

Plaintiffs' argument that Maryland's post-deprivation remedy is inefficient, because it would require a "multiplicity of refund actions" on the same challenge to the DATA, is equally unavailing.  Pl. Mem. at 34-36.  In this regard, plaintiffs contend that multiple suits will be necessary in this case, because of the large number of their members who will want to challenge the DATA's charge.  *Id.*  Plaintiffs' assessment of the number of challenges that will be raised to the DATA may be correct.  But, their concern about the need for a multiplicity of suits has more to do with how their members may choose to litigate this case, rather than any inefficiencies under Maryland law.  As defendant explained during oral argument, Maryland law allows for one taxpayer to challenge the charge imposed by the DATA and to have the determination in that single case apply to other related challenges.  Tr. at 44:16-45:23.  Given this, Maryland law does not require that every company that wishes to challenge the charge imposed by the DATA to independently litigate their claim.  And so, the circumstances presented here are quite distinguishable from those presented in *Ga. R.R. & Banking Co. v. Redwine*, 342 U.S. 299 (1952), where a single taxpayer was confronted with having to bring multiple claims under Georgia's remedy for challenging a tax.[6]  *See Redwine*, 342 U.S. at 303.

In sum, the plain text of the DATA and the undisputed facts in this case make clear that the charge imposed by the DATA is a tax and that Maryland law provides a plain, speedy and efficient remedy for plaintiffs to challenge this tax in state court.  Given this, the TIA jurisdictionally precludes plaintiffs' statutory and constitutional law challenges to this tax.  And so, the Court must DISMISS Counts I, II and III of the amended complaint, pursuant to the TIA.  Fed. R. Civ. P. 12(b)(1); 28 U.S.C. § 1341.

### C. Plaintiffs May Pursue Their Challenge To The DATA's Pass-Through Prohibition

While the TIA jurisdictionally bars plaintiffs' statutory and constitutional law challenges to the charge imposed by the DATA, plaintiffs are on firmer ground in arguing that the Court

---

[6] Plaintiffs' argument that Maryland's remedy is inefficient because of the financial burden imposed by the DATA's charge is without merit, because plaintiffs can remove this financial burden by pursuing Maryland's pre-deprivation remedy.  *See* Pl. Mem. at 35-36; *see also* Def. Reply at 17-18.

15

may consider their challenge to the DATA's pass-through prohibition provision in this Court. Pl. Mem. at 37-38. As discussed above, the DATA contains a pass-through prohibition that prohibits any person liable to pay a tax under the DATA from "directly pass[ing] on the cost of the tax . . . to a customer who purchases . . . digital advertising services by means of a separate fee, surcharge, or line-item." Md. Code Ann. Tax-Gen. § 7.5-102(c). In Count IV of the amended complaint, plaintiffs allege that this provision is unlawful, because it violates the Commerce Clause and the First Amendment. *See* Am. Compl. at ¶¶ 94-96.

The Court agrees with plaintiffs that their challenges to the DATA's pass-through prohibition do not involve a challenge to the "assessment, levy or collection" of a tax, which would implicate the TIA. *See* Pl. Mem. at 2. Rather, plaintiffs' challenges concern whether the State of Maryland can prevent taxpayers who are liable to pay the charge imposed by the DATA from passing on the cost of this tax to consumers. *See* Md. Code Ann. Tax-Gen. § 7.5-102(c).

Because the TIA does not bar such a claim, the Court declines to dismiss Count IV of the amended complaint.[7]

## V. CONCLUSION

In sum, the TIA bars plaintiffs' statutory and constitutional law challenges to the charge imposed by the DATA, because this charge is a tax and Maryland law provides a plain, speedy

---

[7] The Court is not persuaded by defendant's argument that the tax comity doctrine requires that the Court dismiss plaintiffs' claim challenging the DATA's pass-through prohibition provision. Granting plaintiffs' requested relief would not interfere with the State of Maryland's taxing power. *See* Am. Compl at Prayer for Relief (requesting that the Court declare the DATA unconstitutional insofar as it prohibits the assessment and recoupment of the DATA's charge in subsequent commercial transactions and forbids the inclusion of statements on an invoice of a separate fee, surcharge, or line-item to pass on the DATA's charge and to permanently enjoin defendant from prohibiting the assessment and recoupment of the DATA's charge in subsequent commercial transactions, or the inclusion of statements on an invoice of a separate fee, surcharge, or line-item to pass on the charge); *see also BellSouth Telecomms., Inc. v. Ferris*, 542 F.3d 499, 503 (6th Cir. 2008) (allowing a challenge to a similar pass-through prohibition provision to proceed, because the provision "neither generates tax revenue for the [State] nor alters the relationship between the [State] and the party obligated to pay the tax"); *Mobil Oil Corp. v. Tully*, 639 F.2d 912, 918 (2d Cir. 1981) (holding that a challenge to a pass-through prohibition provision could proceed, because "the anti-passthrough provision is not an exercise of the taxing power of the State . . . but rather of its police powers"); *Mobil Oil Corp. v. Dubno*, 639 F.2d 919, 922 (2d Cir. 1981) (allowing a challenge to a pass-through prohibition provision to proceed, because "the anti-passthrough provision[] is not an exercise of the [S]tate's taxing power"); *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010) (the tax comity doctrine "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration").

and efficient remedy for plaintiffs to challenge this tax in state court. The TIA does not, however, bar plaintiffs' challenge to the DATA's pass-through prohibition provision, because this claim does not implicate the State of Maryland's authority to assess, collect, or levy the tax imposed by the DATA.

And so, for the foregoing reasons, the Court:

1. **GRANTS-in-PART** and **DENIES-in-PART** defendant's motion to dismiss;
2. **DENIES-as-MOOT** plaintiffs' cross-motion for summary judgment; and
3. **DISMISSES** Counts I, II and III of the amended complaint.

The parties shall **FILE** a joint status report indicating their respective views on how this matter should proceed and, if warranted, proposing a schedule for further proceedings, on or before **April 4, 2022**.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge