IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA, *et al.*,

              *Plaintiffs*,

v.

PETER FRANCHOT,

              *Defendant*.

No. 1:21-cv-410-DKC

**PLAINTIFFS' SUPPLEMENTAL BRIEF
ADDRESSING THEIR FIRST AMENDMENT CHALLENGE TO
THE PASS-THROUGH PROHIBITION**

Michael B. Kimberly (No. 19086)
Paul W. Hughes (No. 28967)
Stephen P. Kranz*
Sarah P. Hogarth*
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  mkimberly@mwe.com
  (202) 756-8000

*Attorneys for All Plaintiffs*

Tara S. Morrissey*
Jennifer B. Dickey*
  *U.S. Chamber Litigation Center*
  *1615 H Street NW*
  *Washington, DC 20062*
  tmorrissey@uschamber.com
  (202) 463-5337

*Attorneys for the Chamber of Commerce
of the United States of America*

April 29, 2022                        *\* admitted pro hac vice*

**TABLE OF CONTENTS**

Introduction ............................................................................................................................. 1

Argument ................................................................................................................................ 2

    A.   The pass-through prohibition must be struck because it is a content-based ban on speech that fails strict scrutiny............................................................... 2

        1.   The pass-through prohibition bans speech based on its content .................... 2

        2.   The pass-through prohibition does not satisfy strict scrutiny ....................... 7

    B.   The speech at issue is not commercial speech, and the ban would fail intermediate scrutiny even if it were................................................................... 8

        1.   The speech forbidden by the pass-through prohibition is not mere commercial speech....................................................................................... 8

        2.   The pass-through prohibition fails intermediate scrutiny ............................ 9

Conclusion............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*AT&T Corp. v. Rudolph*,
　2007 WL 647564 (E.D. Kan. Feb. 27, 2007) ............................................................. 5, 10

*BellSouth Telecommunications, Inc. v. Farris*,
　542 F.3d 499 (6th Cir. 2008) ................................................................................*passim*

*Bloom v. O'Brien*,
　841 F. Supp. 277 (D. Minn. 1993) ................................................................. 5, 10, 11, 12

*Board of Trustees of SUNY v. Fox*,
　492, U.S. 469 (1989) ...................................................................................................... 13

*Bolger v. Youngs Drug Products Corp.*,
　463 U.S. 60 (1983) ............................................................................................................ 9

*Brown v. Entertainment Merchants Association*,
　546 U.S. 786 (2011) ......................................................................................................... 7

*Burson v. Freeman*,
　504 U.S. 191 (1992) ......................................................................................................... 7

*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
　447 U.S. 557 (1980) ....................................................................................... 9, 10, 12, 13

*Citizens United v. FCC*,
　558 U.S. 310 (2010) ...................................................................................................... 6, 7

*Edenfield v. Fane*,
　507 U.S. 761 (1993) ................................................................................................. 10, 11

*Educational Media Co. at Virginia Tech v. Insley*,
　731 F.3d 291 (4th Cir. 2013) ......................................................................................... 10

*Expressions Hair Design v. Schneiderman*,
　137 S. Ct. 1144 (2017) .................................................................................................. 1, 4

*Garrison v. Louisiana*,
　379 U.S. 64 (1964) ............................................................................................................ 6

*Greater New Orleans Broadcasting Association v. United States*,
　527 U.S. 173 (1999) ....................................................................................................... 12

*Ibanez v. Florida Department of Business and Professional Regulation*,
　512 U.S. 136 (1994) ........................................................................................................ 11

*Norris, on behalf of A.M. v. Cape Elizabeth School District*,
　969 F.3d 12 (1st Cir. 2020) ............................................................................................. 11

*Police Department of Chicago v. Mosley*,
　408 U.S. 92 (1972) ............................................................................................................ 2

Case 1:21-cv-00410-LKG   Document 70   Filed 04/29/22   Page 4 of 18

**Cases—continued**

*R.A.V. v. St. Paul*,
 505 U.S. 377 (1992) .................................................................................................... 2

*Reed v. Town of Gilbert*,
 576 U.S. 155 (2015) ................................................................................................. 2, 3

*Shaw v. Hunt*,
 517 U.S. 899 (1996) .................................................................................................... 7

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Board*,
 502 U.S. 105 (1991) .................................................................................................... 2

*Terminiello v. City of Chicago*,
 337 U.S. 1 (1949) ........................................................................................................ 6

*Turner Broad. Sys. v. FCC*,
 512 U.S. 622 (1994) .................................................................................................... 7

*United States v. Alvarez*,
 567 U.S. 709 (2012) .................................................................................................... 2

*United States v. Fresno County*,
 429 U.S. 452 (1977) .................................................................................................... 6

*United States v. Playboy Entertainment Group*,
 529 U.S. 803 (2000) .................................................................................................... 8

*United States v. United Foods, Inc.*,
 533 U.S. 405 (2001) .................................................................................................... 9

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*,
 425 U.S. 748 (1976) .................................................................................................... 9

*Washington Post v. McManus*,
 355 F. Supp. 3d 272 (D. Md. 2019) ......................................................................... 2, 6

*Zauderer v. Office of Disciplinary Counsel of Superior Court of Ohio*,
 471 U.S. 626 (1985) .................................................................................................. 13

**Other authorities**

47 U.S.C. § 542(c)(1) ........................................................................................................ 5

138 Cong. Rec. S561-02 (daily ed. Jan. 29, 1992) ........................................................... 6

*The City of Pasadena, Cal., et al.*, Petitions for Declaratory Ruling on Franchise
 Fee Pass Through Issues, 2001 WL 1167612, ¶ 23 (FCC Oct. 4, 2001) ......................... 5

Md. Code, Tax-Gen. § 7.5-102(c) ............................................................................. 1, 3, 5

Md. Code, Envt. § 9-228(g) ............................................................................................ 12

Md. Code, Trans. § 18-108(e)(1) ................................................................................ 8, 11

**INTRODUCTION**

The State has conceded that the pass-through prohibition (Tax-Gen. § 7.5-102(c)) regulates speech, effectively dooming its defense of Count IV of the complaint.

According to the State, the pass-through prohibition prohibits the passing on of Maryland's digital advertising tax "only when it is imposed on the customer by means of a 'separate fee, surcharge, or line-item'" expressly identified on an invoice or other customer communication. Joint Status Report I(a) (Dkt. 68). It does not prohibit the passing on of the tax "indirectly" to customers through increased rates that merely "factor[] [the] cost [of the tax] into . . . customer pricing" without expressly stating it as a line-item on an invoice. *Id.* Thus, the pass-through prohibition does not "regulate[] the amount a [taxpayer] can collect" from customers; it instead "regulates how sellers may communicate their prices" on invoices, billing statements, and the like. *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1146 (2017). That is a regulation of speech, not conduct. *Id.*

The State's regulation of speech cannot satisfy the strict scrutiny that applies to it, nor even the lower standard of intermediate scrutiny that applies to some commercial speech. The regulation is plainly content-based, and thus presumptively unconstitutional. It would be permissible only if it were narrowly tailored to further a compelling governmental interest, and the prohibition here does not come close to meeting that rigorous standard. Indeed, it does not serve any apparent interest at all, except to insulate lawmakers from political responsibility for the digital advertising tax at issue here. It must be struck.\*

---

\*   We occasionally describe the charge imposed as a "tax" only because that is the word that the General Assembly used. As we previously have explained, the Tax Injunction Act turns on substance rather than labels, and we maintain our position that the charge is not a "tax" within the particular meaning of the TIA.

**ARGUMENT**

**A.     The pass-through prohibition must be struck because it is a content-based ban on speech that fails strict scrutiny**

*1.     The pass-through prohibition bans speech based on its content*

Under the First Amendment's Free Speech Clause, as incorporated against the States by the Fourteenth Amendment, state governments have "no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Board*, 502 U.S. 105, 115 (1991)). As Judge Grimm has written, "it is a fundamental tenet of First Amendment jurisprudence that the government 'has no power to restrict expression because of its message, its ideas, or its content.'" *Washington Post v. McManus*, 355 F. Supp. 3d 272, 286 (D. Md. 2019) (quoting *United States v. Alvarez*, 567 U.S. 709, 716 (2012))

**a.**  The pass-through prohibition is a presumptively unconstitutional content-based speech restriction. "Th[e] commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163. More simply stated, a regulation is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.*

2

The pass-through prohibition is undeniably such a law. According to its plain terms, an invoice that does *not* expressly attribute increased advertising costs to the Maryland Digital Advertising Tax Act through an express fee or line-item is lawful. But an invoice that *does* make that attribution—one that identifies the fact and magnitude of the price increase attributable to the Act and assigns responsibility for it to elected officials through an expressly-stated "fee, surcharge, or line-item" (Tax-Gen. § 7.5-102(c))—is prohibited and subject to governmental punishment. Without doubt, distinguishing between a permissible and impermissible invoice requires an analysis of "the message [the] speaker conveys." *Reed*, 576 U.S. at 163. By silencing taxpayers in this way, Maryland lawmakers attempt to avoid political accountability for the practical consequences of the Act. This is precisely the kind of content-based speech restriction that the Supreme Court has said time and again is presumptively invalid.

    **b.**  In prior briefs, the State asserted that "the direct pass-through prohibition regulates conduct, not speech." Motion to Dismiss 47. That is no longer a tenable position in light of the State's stipulation in the recently-filed Joint Status Report. There, the State acknowledged that the pass-through restriction prohibits the passing on of Maryland's digital advertising tax only when it is done so "directly." Joint Status Report I(a) (Dkt. 68). The cost is passed on directly "only when it is imposed on the customer by means of a 'separate fee, surcharge, or line-item'" expressly identified on an invoice, statement, or other communication. *Id*. The State has stipulated that the pass-through restriction does not prohibit the passing on of the tax "indirectly" to customers, which happens when it is passed on to customers by factoring the cost of the tax into customer pricing *without* expressly stating it as a separate fee or line-item. *Id*. Thus, the pass-through prohibition does not

3

"regulate[] the amount a [taxpayer] can collect" from customers; it instead "regulates [only] how sellers may communicate their prices." *Expressions Hair Design*, 137 S. Ct. at 1146. As we noted at the outset, that is a regulation of speech and not conduct. *Id.*

That conclusion is confirmed by the outcome in *Expressions Hair Design* itself. The law at issue in that case required vendors who wanted to use differential pricing for credit cards and cash to do so only by offering a "discount for the use of cash" rather than stating the difference as a surcharge for use of a credit card. *Id.* at 1146. The Court held that the law was a content-based speech restriction because it did not prohibit sellers from charging more to customers wishing to use credit cards; it prohibited only the way of "convey[ing] [the] price" differential. *Id.*

The same holds true here. According to the State, the pass-through prohibition does not prohibit a company selling digital advertising from adjusting its prices to recoup the gross revenue charge assessed by the Act. All it prohibits is how a company *communicates* those prices increases—specifically, "by means of a separate fee, surcharge, or line-item," which the State has acknowledged is done via "written or oral communications." Motion to Dismiss 49.

In this way, the pass-through prohibition is indistinguishable from the prohibition invalidated in *BellSouth Telecommunications, Inc. v. Farris*, 542 F.3d 499 (6th Cir. 2008). There, the Kentucky legislature imposed a tax on telecommunications providers and (like Maryland lawmakers here) prohibited those providers from "separately stat[ing] the tax on [a customer's] bill." *Id.* at 500. Observing that the State "has no objection to the providers' conduct (raising prices to account for the new tax), just its speech (saying why it has raised prices)," the Sixth Circuit held that the provision "regulates speech, not conduct." *Id.* at

4

506. Other courts have held the same in respect to similar laws. *See, e.g.*, *AT&T Corp. v. Rudolph*, 2007 WL 647564, at *1, *11-*12 (E.D. Kan. Feb. 27, 2007) (holding that Kansas law prohibiting companies from recouping a state tax "directly from purchasers" by "separately stating the tax on the bill to the purchasers" regulated speech); *Bloom v. O'Brien*, 841 F. Supp. 277, 280-81 (D. Minn. 1993) (similar).

  **c.** Not only does Tax Gen. § 7.5-102(c) prohibit speech based on its content; it prohibits *political* speech, which is subject to the very highest and most urgent protections of the First Amendment. As the Sixth Circuit has explained, a pass-through prohibition like this one forbids payers of the Act's assessment from "announcing who bears political responsibility" for the new charge in the "forum most likely to capture voters' attention: an invoice that displays a predictable consequence of the tax." *BellSouth*, 542 F.3d at 505. In other words, a line-item identifying a separate amount attributable to the Act allows a company to communicate to its customers the reason for rising prices: not opportunism by the company, but ill-conceived actions of elected officials.

  Congress has recognized the importance of this kind of speech. For example, in its regulation of cable operators, Congress has specified that local regulators may not prohibit the identification "as a separate line item on each regular bill of each subscriber . . . [t]he amount of the total bill assessed as a franchise fee and the identity of the franchising authority to which the fee is paid." 47 U.S.C. § 542(c)(1). The purpose of this provision is "to inform subscribers that local elected officials are imposing franchise fees so that there will be a measure of accountability for fees and fee increases." Mem. Op. & Order, *The City of Pasadena, Cal., et al.*, Petitions for Declaratory Ruling on Franchise Fee Pass Through Issues, 2001 WL 1167612, ¶ 23 (FCC Oct. 4, 2001), *petitions for review denied*, *Texas Coal.*

5

*of Cities for Utility Issues v. FCC*, 324 F.3d 802 (5th Cir. 2003). The point of "subscriber bill itemization [is] to give the cable companies an opportunity to itemize these so-called hidden costs, to explain to the people" why prices are rising, so they "will know it is not just the cable company jacking up the prices" but excessive "taxes which the cable has to pay." 138 Cong. Rec. S561-02, S569 (daily ed. Jan. 29, 1992) (statement of Sen. Lott). The pass-through prohibition muzzles that kind of speech here, permitting elected officials who are in fact responsible for increased prices to "duck political responsibility." *BellSouth*, 542 F.3d at 505.

Speech addressed to "public issues" and that facilitates "hold[ing] officials accountable to the people" is "an essential mechanism of democracy." *Citizens United v. FCC*, 558 U.S. 310, 339 (2010); *accord Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."). This is particularly true for the government's power to tax, as to which the primary security against abuse is democratic accountability: "A State's constituents can be relied on to vote out of office any legislature that imposes an abusively high tax on them." *United States v. Fresno County*, 429 U.S. 452, 458-59 (1977). Content-based restrictions on speech that prohibit speakers from assigning responsibility for taxes to the government and that thereby undermine the accountability of public officials—like the pass-through prohibition at issue here—are presumptively unconstitutional. *See Washington Post*, 355 F. Supp. 3d at 286 ("the Free Speech Clause aims, above all else, . . . to ensure 'that government remains responsive to the will of the people'") (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)).

### *2.    The pass-through prohibition does not satisfy strict scrutiny*

Because the pass-through prohibition is a content-based speech restriction, it can survive only if the State shows that it passes strict scrutiny. *Citizens United*, 558 U.S. at 340. But "it is the rare case" in which a State is able to show that a speech restriction is narrowly tailored to serve a compelling interest. *Burson v. Freeman*, 504 U.S. 191, 211 (1992) (plurality opinion). This is not one of those rare cases.

**a.**   To establish a compelling interest, the State would have to identify an interest (1) that is "some pressing public necessity, some essential value that has to be preserved" (*Turner Broad. Sys. v. FCC*, 512 U.S. 622, 680 (1994) (O'Connor, J., concurring and dissenting)), and (2) that preservation of that compelling value was the legislature's "actual purpose" and not a post hac rationalization (*Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996)); *Brown v. Entertainment Merchants Association*, 546 U.S. 786, 799 (2011) ("The State must specifically identify an 'actual problem' in need of solving.").

Nothing in the text of the Act or in the legislative history indicates a compelling interest for the speech ban. To the contrary, the legislative history indicates that the purpose of the Act was to punish large technology companies (*see* Pls. MSJ & Opp. to MTD at 25-29)—which is not a legitimate, much less a compelling, interest for the ban. *See Citizens United*, 558 U.S. at 341 (reaffirming that, "in the context of political speech, the Government may [not] impose restrictions on certain disfavored speaker").

**b.**   Even if the State could identify some compelling interest served by the pass-through prohibition, it is hard to imagine how the pass-through prohibition could be narrowly tailored to serve that purported interest. "When a plausible, less restrictive alternative is offered to a content-based restriction, it is the Government's obligation to prove that

7

the alternative will be ineffective to achieve its goals." *United States v. Playboy Entertainment Group*, 529 U.S. 803, 816 (2000). A blanket prohibition like the pass-through clause is virtually never narrowly tailored. If the asserted governmental interest were avoidance of confusion, for example, the State could have permitted a line item identifying the digital advertising tax while limiting how the fee may be described. For rental-care statements, for example, Maryland law specifies that separately-stated car registration fees "shall be described in the rental agreement as: 'The estimated average per day per vehicle portion of the rental company's total annual titling and registration costs.'" Md. Code, Trans. § 18-108(e)(1). The State's unjustified failure to adopt a more limited alternative in this case cannot be reconciled with its obligations under the First Amendment.

The Court need go no further to invalidate the pass-through prohibition: It regulates speech based on its content, forbidding the assignment of responsibility for rising prices to lawmakers. It does not satisfy strict scrutiny and must be struck as unconstitutional.

### B. The speech at issue is not commercial speech, and the ban would fail intermediate scrutiny even if it were

The State may argue that the pass-through prohibition is a regulation of commercial speech subject only to intermediate scrutiny. That is both wrong and irrelevant—*wrong* because the pass-through prohibition is a content-based restriction of political speech; and *irrelevant* because, even if it were otherwise, the pass-through prohibition would fail intermediate scrutiny as well.

#### 1. *The speech forbidden by the pass-through prohibition is not mere commercial speech*

To begin, the speech at issue here is not commercial speech. The Supreme Court has defined commercial speech as "expression related solely to the economic interests of the

8

speaker and its audience." *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 561 (1980). It is "usually defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). The Court has therefore identified the proposal of a commercial transaction—for example, "I will sell you the X prescription drug at the Y price" (*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 761 (1976))—as "the core notion of commercial speech" (*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66 (1983)).

That does not describe the speech here. Again, a line-item expressly identifying the fact and magnitude of the digital-advertising tax for customers of digital advertising companies is a statement assigning political responsibility for the cost to the State rather than the service provider. As a statement intended to hold lawmakers accountable for their decisions, it is plainly not a mere proposal to engage in a commercial transaction.

The fact that the speech at issue here is the speech of a for-profit company conveyed on a document relating to a commercial transaction does not alter that conclusion. A company could express its support for a particular candidate in an upcoming election or for particular legislation pending before the General Assembly; such speech would not be rendered "commercial" for First Amendment purposes merely because it appeared on an invoice or account statement, rather than on a leaflet, billboard, or website. Just so here.

### 2. *The pass-through prohibition fails intermediate scrutiny*

Even supposing the speech at issue here were commercial in nature, the pass-through prohibition still would violate the First Amendment. The Supreme Court has recognized two broad categories of commercial speech regulations. First are laws that regulate

9

commercial speech that is misleading or that concerns unlawful behavior. *Central Hudson*, 447 U.S. at 563-64. Second are all other regulations of commercial speech, as to which "the government's power is more circumscribed." *Central Hudson*, 447 U.S. at 564. General commercial speech restrictions are constitutional only if (1) the State "assert[s] a substantial interest to be achieved by restrictions on commercial speech," (2) the restriction "directly advance[s] the state interest involved," and (3) the regulation is not more extensive than necessary to serve the government's interest. *See also Educational Media Co. at Virginia Tech v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013). The State bears the burden of proof on each of these elements, and "mere speculation or conjecture" is not enough—the State "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770-771 (1993).

The pass-through prohibition plainly falls into the second category, and the State cannot meet its burden to defend it. Courts have repeatedly invalidated similar measures prohibiting companies from stating taxes and fees imposed by the government as line-items on bills to customers. *See, e.g., BellSouth*, 542 F.3d at 506-10 (Kentucky law prohibiting telecommunications providers from separately stating on bills a gross revenues tax imposed on them violated First Amendment); *AT&T Corp. v. Rudolph*, 2007 WL 647564, at *13 (E.D. Ken. Feb. 27, 2007) (Kentucky law prohibiting companies from collecting gross revenue tax "directly from purchasers" by "separately stating the tax on the bill to purchasers" violated First Amendment); *Bloom*, 841 F. Supp. at 281-83 (Minnesota law prohibiting healthcare providers from itemizing gross revenue tax on patient's bill likely violated First Amendment). The pass-through prohibition is doomed to suffer the same fate.

**a.** Maryland has never articulated, much less pointed to evidence of, a substantial interest to be achieved by banning an express statement of the magnitude and origin of cost increases associated with its digital advertising charge. Nor may Maryland now invoke a *post hoc* justification for the ban in an attempt to meet its burden. *See, e.g., Norris on behalf of A.M. v. Cape Elizabeth School District*, 969 F.3d 12, 26-28 (1st Cir. 2020); *cf. Edenfield*, 507 at 768 (court cannot supplant asserted interest with "other suppositions"). Nothing in the Act or the Act's legislative history supports a conclusion that the legislature was concerned that customers would be misled or otherwise confused by line-items on billing statements. There is also no evidence in the legislative record of consumers being misled or confused by such line-items. *Cf. Ibanez v. Florida Department of Business and Professional Regulation*, 512 U.S. 136, 146 (1994) ("If the protections afforded commercial speech are to retain their force, we cannot allow rote invocation of the words 'potentially misleading' to supplant the [State's] burden."). As other courts have noted, "[a] bill which accurately states the amount and the nature of the charge is not inherently misleading." *Bloom*, 841 F. Supp. at 282; *accord BellSouth*, 542 F.3d at 506.

Any supposed interest in preventing confusion is further undermined by the fact that Maryland prohibits "just one type of line-item statement—those about [the digital advertising] tax," while "*allow[ing]* those same separate statements on other industries' bills." *BellSouth*, 542 F.3d at 507. Indeed, Maryland expressly permits certain companies to pass on charges it imposes on those companies through separately-stated charges to customers in other contexts. *See, e.g.*, Transp. § 18-108 (permitting rental companies to charge consumers, via a "separately stated fee," to recover the costs of "[a]ny . . . fee or charge imposed by a governmental entity"); Transp. § 18.5-108 (permitting peer-to-peer car sharing

11

program to recover any "fee or charge imposed by a governmental entity" via "a separately stated fee" to consumers); Envt. § 9-228(g) (imposing tire recycling fee on tire dealers for the first sale of a new tire in the State and permitting tire dealer to "separately state[]" the "amount of the tire recycling fee" in a retail sale).

If the State were truly interested in protecting consumers from confusion about line items for government taxes and charges, it would preclude other companies from using such line items, not expressly authorize them by statute in the other contexts identified above. *See Greater New Orleans Broadcasting Association v. United States*, 527 U.S. 173, 187, 190-92 (1999) (the government's "unwillingness to adopt a single . . . policy that consistently endorses either interest" makes a speech restriction "more difficult . . . to defend").

**b.** The pass-through prohibition here would not serve an interest in avoiding misleading or confusing statements in any event. That is because Maryland has not attempted to prohibit companies from communicating information about the tax by other means. If the State were genuinely concerned about consumer confusion, it would ban "all communications between the [companies] and consumers about the relationship between the tax and price increase." *BellSouth*, 542 F.3d at 507. But the law "allows [companies] to tell their customers anything about the tax, no matter how confusing, in all settings save one: an invoice." *Id.* A law that allows service providers to "tell consumers anything they wish about the gross revenue tax, except the itemized amount of the tax which the consumer is required to pay" on an invoice or bill "is hardly an effective means to accurately convey the information which is of most concern to individual consumers." *Bloom*, 841 F. Supp. at 282. By continuing to allow other forms of communication of the same type of information,

the pass-through prohibition would provide at most "ineffective [and] remote support" for whatever interest the State might invoke. *Central Hudson*, 447 U.S. at 556.

**c.** Finally, the pass-through prohibition is not sufficiently tailored to any objective that the State may assert. The regulation must be tailored such that there is a "fit between the legislature's ends and the means chosen to accomplish those ends." *Board of Trustees of SUNY v. Fox*, 492, U.S. 469, 480 (1989) (quotation marks omitted). Absolute, blanket prohibitions like the pass-through prohibition will seldom pass that test. "[T]he free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing . . . the harmless from the harmful." *Zauderer v. Office of Disciplinary Counsel of Superior Court of Ohio*, 471 U.S. 626, 646 (1985). Thus, the State may not "suppress information when narrower restrictions on expression would serve its interest as well." *Central Hudson*, 447 U.S. at 565. There is, in short, no saving the pass-through prohibition even if it were construed (contrary to fact) as a regulation of only commercial speech.

**CONCLUSION**

The Court should deny the State's motion to dismiss and grant plaintiffs' cross-motion for summary judgment with respect to Count IV of the amended complaint.

Dated: April 29, 2022

Respectfully submitted,

/s/ *Michael B. Kimberly*

Michael B. Kimberly (No. 19086)
Paul W. Hughes (No. 28967)
Stephen P. Kranz*
Sarah P. Hogarth*
*McDermott Will & Emery LLP*
*500 North Capitol Street NW*
*Washington, DC 20001*
*mkimberly@mwe.com*
*(202) 756-8000*

*Attorneys for All Plaintiffs*

Tara S. Morrissey*
Jennifer B. Dickey*
*U.S. Chamber Litigation Center*
*1615 H Street NW*
*Washington, DC 20062*
*tmorrissey@uschamber.com*
*(202) 463-5337*

*Attorneys for the Chamber of Commerce of the United States of America*

* admitted pro hac vice

14