# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, | * | |
| *Plaintiffs*, | * | |
| v. | * | No. 1:21-cv-00410-LKG |
| | * | |
| PETER FRANCHOT, | * | |
| *Defendant*. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S SUPPLEMENTAL BRIEF
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDMENT CLAIM

BRIAN E. FROSH
Attorney General of Maryland

JULIA DOYLE BERNHARDT
Federal Bar No. 25300
jbernhardt@oag.state.md.us
STEVEN M. SULLIVAN
Federal Bar No. 24930
ssullivan@oag.state.md.us
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7291
(410) 576-6955 (facsimile)

BRIAN L. OLINER
Federal Bar No. 05780
boliner@marylandtaxes.gov
Assistant Attorney General
80 Calvert Street, Room 303
P.O. Box 591
Annapolis, Maryland 21404
(410) 260-7808

April 29, 2022                                    Attorneys for Defendant

## SUPPLEMENTAL ARGUMENT

### APPLICABLE LAW REQUIRES DISMISSAL OF PLAINTIFFS' REMAINING FIRST AMENDMENT CHALLENGE TO THE DIGITAL ADVERTISING GROSS REVENUE TAX ACT'S DIRECT PASS-THROUGH PROHIBITION.

The Court's April 8, 2022 scheduling order, ECF 69, directed the parties to file supplemental briefs regarding the only remaining claim in this case and, specifically, to address "[w]hether the Digital Advertising Gross Revenues Tax Act's pass-through prohibition violates the First Amendment."

As demonstrated by the briefing to date in this case, plaintiffs have failed to make the showing necessary to establish their facial First Amendment challenge to the Act's pass-through prohibition, in at least two respects. First, they fail even to allege what any plaintiff must prove to "succeed in a facial challenge," which is "'that no set of circumstances exists under which the Act would be valid' under the First Amendment, 'i.e., that the law is unconstitutional in all of its applications.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (rejecting facial First Amendment challenge to state's primary election system) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Both in their opposition to the motion to dismiss, ECF 31-1 at 56, and in their reply memorandum, ECF 47 at 19, plaintiffs acknowledge that the direct pass-through prohibition is susceptible to a plausible interpretation that it regulates not speech but *conduct*, by prohibiting the *conduct* of directly passing through to a customer a taxpayer's digital advertising gross revenue tax burden. Therefore, plaintiffs themselves have posited a "set of circumstances . . . under which the Act would be valid" as a regulation of conduct under the First Amendment. *Id.* It is not "'an abridgment of freedom of speech'" for a state to regulate such conduct, even if the conduct of invoicing customers for digital advertising services is "'in part initiated, evidenced, or carried out by means of language, either

spoken, written, or printed.'" *Rumsfeld v. Forum for Academic & Inst. Rights, Inc.,* 547 U.S. 47, 62 (2006) (citation omitted).

Second, and relatedly, plaintiffs have not satisfied their "'initial burden of proving that speech was restricted by the governmental action in question.'" *Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015) (citations omitted). Consequently, their challenge founders on "the threshold issue of whether [the direct pass-through prohibition] burdens speech and thus is subject to First Amendment scrutiny." *American Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606 (4th Cir. 2001). The pass-through prohibition, as set forth in § 7.5-102(c) of the Tax-General Article, does not purport to impose any restriction on what the taxpayer may say to the customer, or anyone else, about the tax cost or any other subject. Instead, the statute merely prohibits a particular business practice, by forbidding the taxpayer to "directly pass on the cost of the tax imposed . . . to a customer . . . by means of a separate fee, surcharge, or line-item." Md. Code Ann., Tax-Gen. § 7.5-102(c).

Plaintiffs suggest that, if construed according to one of their proposed alternative readings, "the pass-through prohibition is 'a ban on core political speech,'" including a ban against "statements on invoices 'announcing who bears political responsibility' for the additional charge." ECF 47 at 25 (quoting *BellSouth Telecomm. v. Farris*, 542 F.3d 499, 504-05 (6th Cir. 2008)). But the prohibition does nothing of that kind. Neither § 7.5-102(c) nor any other provision of the Act bans speech, and nothing in the law prevents, or even discourages, a taxpayer from including on an invoice any "political speech" the taxpayer wishes to convey to the customer. If, for example, the taxpayer wishes to inform the customer that the invoiced charge is higher than it might otherwise be due to the imposition of the digital ad tax, the taxpayer is free to communicate that or any other message. Indeed, if the taxpayer wants to use the invoice as an opportunity to engage

in political speech, the taxpayer is free to express its displeasure with the tax and identify "who bears political responsibility for [the] new tax." *BellSouth*, 542 F.3d at 505. The absence of any speech restriction in Maryland's pass-through prohibition distinguishes it from the Kentucky statute's "no-stating-the-tax clause," which the Sixth Circuit invalidated in *BellSouth*.[1] The

---

[1] In this respect, Kentucky's statute making it unlawful to "state the tax on the bill," former Ky. Rev. Stat. Ann. § 136.616(3), bore some resemblance to the reading of a New York credit card surcharge statute that the Second Circuit had initially adopted when it rejected an as-applied First Amendment challenge in *Expressions Hair Design v. Schneiderman*, 808 F.3d 118 (2d Cir. 2015). Though the Second Circuit noted the "primary problem" with the claim was that it was "far from clear" that the challenged statute actually prohibited merchants from charging more if a customer paid with a credit card instead of cash, *id.* at 137, the court assumed that the statute would be violated if the merchant "identif[ied] one sticker price . . . and indicate[d] that credit card users are charged more than that amount," *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1149 (2017). Based on that interpretation of the statute, the Supreme Court deemed it different from "a typical price regulation," because under the statute merchants were "free to charge . . . any . . . amount for credit" purchases but the law regulated "how sellers may communicate" to customers what they charged. *Id.* at 1150-51. For that reason, the Supreme Court concluded that the statute "regulates speech" and remanded the case for further consideration of whether it violated the First Amendment. *Id.* at 1151. On remand, however, the Second Circuit certified to the Court of Appeals of New York the question "whether a merchant complies with [the statute] so long as the merchant posts the total dollars-and-cents price charged to credit card users," *Expressions Hair Design v. Schneiderman*, 877 F.3d 99, 102 (2d Cir. 2017), a question the state highest court answered in the affirmative, *Expressions Hair Design v. Schneiderman*, 32 N.Y.3d 382, 384, 117 N.E.3d 730, 731 (N.Y. 2018). The state court opined that the statute "permits differential pricing but requires that a higher price charged to credit card users be posted in total dollars-and-cents form." *Id.*, 32 N.Y.3d at 392, 117 N.E.3d at 736. So long as a merchant satisfied that requirement, nothing in the statute "prohibit[ed] merchants from explaining the difference in price as a 'surcharge' attributable to credit card transaction fees they must bear," and "merchants [we]re free to call the price differential anything they wish without fear of prosecution under the statute." *Id.*, 32 N.Y.3d at 393, 117 N.E.3d at 736-37. Thus, the state highest court's authoritative interpretation of the statute clarified that it did not restrict speech, and as a result the Second Circuit granted the parties' joint motion to vacate the district court's judgment and to remand for dismissal of the complaint. *Expressions Hair Design v. Schneiderman*, 2d Cir. Nos. 13-4533(L), 13-4537, ECF 320 (Jan. 14, 2019).

Kentucky statute prevented the taxpayer from mentioning the tax amount on an invoice; Maryland's statute places no restriction on stating or referencing the tax.

Plaintiffs further argue that "the pass-through prohibition does not in fact forbid the conduct of passing the Act's charge on to purchasers of advertising services," but "forbids only the identification of the pass-through on a bill or invoice." ECF 47 at 25. They are mistaken. First, Tax-General § 7.5-102(c) does expressly prohibit a taxpayer from "*directly* pass[ing] on the cost of the tax imposed . . . to a customer[.]" *Id.* (emphasis added). This prohibition is not merely a question of "identification," nor is it, as plaintiffs seem to suggest, illusory or meaningless. The prohibition against *direct*, as opposed to indirect, pass-through of the tax cost serves to advance the revenue-generating purpose of the statute. That is, § 7.5-101(b) defines the subject of the tax— "annual gross revenues"—to mean "income or revenue from all sources, *before any expenses or taxes*, computed according to generally accepted accounting principles." *Id.* (emphasis added). By preventing the taxpayer from directly passing on the tax cost to the customer as a "separate fee, surcharge, or line-item," § 7.5-102(c) helps to ensure that the taxpayer's total "annual gross revenues" reflect the full amount of revenues received from customers, undiminished by any tax costs that the taxpayer might otherwise have preferred to pass directly to the customer.

Contrary to what is implicit in plaintiffs' argument, the direct pass-through prohibited by § 7.5-102(c) is not merely the equivalent of "indirectly passing on the cost of the tax imposed under Tax-General § 7.5-102 by factoring such cost into its customer pricing." Joint Status Report ¶ 1.a, ECF 68 at 1. Material differences separate a direct dollar-for-dollar pass-through from less direct methods of recouping costs. These differences form the basis of important principles of law that apply in other contexts. For example, the Supreme Court has relied on the differences between direct and indirect passing of costs to justify the rule that only direct purchasers may recover

damages under federal antitrust laws. In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Court expressly analogized an "overcharge imposed by an antitrust violator or group of violators on their customers" to "an excise tax imposed on the violator's product in the amount of the overcharge," and relied on "economic theorems for the incidence of an excise tax," *id.* at 741 n.25.

As the Court went on to explain, "simplifying assumptions" of "economic theory" might provide "a precise formula for calculating how" a cost such as a tax "is distributed between the [taxed] party (passer) and its customers (passees)," but "'in the real economic world rather than an economist's hypothetical model,' the latter's drastic simplifications generally must be abandoned." *Id.* at 741, 742 (quoting *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493 (1968)). Even though "[f]irms in many sectors of the economy rely to an extent on cost-based rules of thumb in setting prices," "[t]hese rules are not adhered to rigidly," and "the allocation of costs" is "varied to reflect demand conditions," among other considerations. *Id.* at 744. Thus, unlike directly passing on the tax cost to a customer as an item on an invoice, indirectly passing on the cost by factoring it into the taxpayer's customer pricing involves "intricacies" that increase the complexity "of tracing the effect" of the tax on the taxpayer's "prices, costs, sales, and profits." *Id.*

Like the State of Maryland here, the federal government draws significant distinctions between costs that can be directly passed on and those that cannot. Such distinctions feature most notably in federal procurement law, which authorizes a contractor to bill directly to the contract those costs that qualify as "direct costs," 48 C.F.R. 31.202(a), whereas other costs are treated as "indirect costs," 48 C.F.R. 31.203, that may require some determination of the extent to which they are allocable to the contract. *See* 48 C.F.R. 31.110(a) ("Certain contracts require certification of the indirect cost rates proposed for final payment purposes."). These restrictions on pass-

through of costs are routinely applied daily by the various federal agencies in their dealings with private business entities, evidently without encountering any First Amendment implications.

The Digital Ad Tax Act's prohibition on direct pass-through of the tax is no more a restriction of speech than those longstanding federal procurement rules. Tax-General § 7.5-102(c) does not limit or chill any taxpayer's ability to express its views, whether via an invoice or any other medium. Therefore, the Court should dismiss the First Amendment claim.

## CONCLUSION

For the reasons stated above and in defendant's opening memorandum in support of motion to dismiss, ECF 29-1 at 52-54, and in his reply in support of motion to dismiss, ECF 36 at 40-41, the Court should dismiss plaintiffs' only remaining claim, and plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Julia Doyle Bernhardt
_____
JULIA DOYLE BERNHARDT
Federal Bar No. 25300
jbernhardt@oag.state.md.us

/s/ Steven M. Sullivan
_____
STEVEN M. SULLIVAN
Federal Bar No. 24930
ssullivan@oag.state.md.us
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7291
(410) 576-6955 (facsimile)

/s/ Brian L. Oliner

_____
BRIAN L. OLINER
Federal Bar No. 05780
boliner@marylandtaxes.gov
Assistant Attorney General
80 Calvert Street, Room 303
P.O. Box 591
Annapolis, Maryland 21404
(410) 260-7808

Attorneys for Defendant