IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, | * | |
| | * | |
| *Plaintiffs*, | * | |
| | * | |
| v. | * | No. 1:21-cv-00410-LKG |
| | * | |
| PETER FRANCHOT, | * | |
| *Defendant*. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S RESPONSIVE SUPPLEMENTAL BRIEF
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDMENT CLAIM**

BRIAN E. FROSH
Attorney General of Maryland

JULIA DOYLE BERNHARDT
Federal Bar No. 25300
jbernhardt@oag.state.md.us
STEVEN M. SULLIVAN
Federal Bar No. 24930
ssullivan@oag.state.md.us
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7291
(410) 576-6955 (facsimile)

BRIAN L. OLINER
Federal Bar No. 05780
boliner@marylandtaxes.gov
Assistant Attorney General
80 Calvert Street, Room 303
P.O. Box 591
Annapolis, Maryland 21404
(410) 260-7808

May 13, 2022                                             Attorneys for Defendant

**TABLE OF CONTENTS**

Page

RESPONSIVE SUPPLEMENTAL ARGUMENT ........................................................................1

I.  PLAINTIFFS CANNOT SATISFY THE MINIMUM REQUIREMENT FOR A FACIAL CHALLENGE. ........................................................................................................2

II. MARYLAND'S DIRECT PASS-THROUGH PROVISION PROHIBITS ONLY THE CONDUCT OF DIRECTLY PASSING ON THE DIGITAL AD TAX TO A CUSTOMER AND DOES NOT RESTRICT SPEECH. ..............................................................................................4

III. MARYLAND'S DIRECT PASS-THROUGH PROHIBITION IS NOT A CONTENT-BASED SPEECH RESTRICTION SUBJECT TO STRICT SCRUTINY. ..........................................7

IV. IF CONSTRUED TO REGULATE COMMERCIAL SPEECH, THE PASS-THROUGH PROHIBITION COULD SATISFY INTERMEDIATE SCRUTINY UNDER CENTRAL HUDSON. ..............................................................................................................12

CONCLUSION ..................................................................................................................15

# RESPONSIVE SUPPLEMENTAL ARGUMENT

Plaintiffs' arguments in their supplemental brief, ECF 70, all proceed from their misunderstanding of the challenged statute and applicable case law and from their distortion of the intent and import of the parties' stipulation in the April 4, 2022 joint status report. ECF 68 at 1. Contrary to plaintiffs' assertion, ECF 70 at 1, the State has not by any means "conceded that the pass-through prohibition (Tax-Gen. § 7.5-102(c)) regulates speech," as the Court is aware from reading defendant's supplemental brief, ECF 71. *See id.* at 3 ("[P]laintiffs have not satisfied their 'initial burden of proving that speech was restricted. . . . The pass-through prohibition, as set forth in § 7.5-102(c) . . . does not purport to impose any restriction on what the taxpayer may say to the customer, or anyone else, about the tax cost or any other subject. Instead, the statute merely prohibits a particular business practice, by forbidding the taxpayer to 'directly pass on the cost of the tax imposed . . . to a customer . . . by means of a separate fee, surcharge, or line-item.'") (quoting §7.5-102(c)). Nothing in the stipulation alters this reality of Maryland law.

Plaintiffs incorrectly attribute to the direct pass-through prohibition in § 7.5-102(c) of the Tax-General Article an intent to ban communication of digital ad tax information. But, unlike statutes challenged in the cases on which plaintiffs rely, Maryland's statute does not prevent persons subject to the tax from conveying any information they might choose to communicate to a customer. So long as the taxpayer does not "directly pass on the cost of the tax imposed . . . to a customer . . . by means of a separate fee, surcharge, or line-item," Md. Code Ann., Tax-Gen. § 7.5-102(c), the statute places no limitations or constraints on what the taxpayer can communicate about the tax, whether it be stating the amount of digital ad tax or expressing any views the taxpayer might have about the tax. A similar statutory regime has been upheld against a First Amendment challenge by the Supreme Court of Washington, *see Nelson v. Appleway Chevrolet,*

*Inc.*, 157 P.3d 847, 852-53 (Wash. 2007)—discussed further below— but in no case cited by either party has such a pass-through prohibition scheme ever been deemed to violate the First Amendment. The arguments in plaintiffs' supplemental brief should therefore be rejected, both because they are premised on a misreading of the statute and because the legal principles they urge the Court to apply are ill-suited to analysis of Tax-General § 7.5-102(c) as it is actually written.

I. **PLAINTIFFS CANNOT SATISFY THE MINIMUM REQUIREMENT FOR A FACIAL CHALLENGE.**

Even before reaching that question, however, the Court should reject plaintiffs' facial challenge to the statute because, after having three opportunities to brief their First Amendment claim, they still have not satisfied the threshold requirement for such a challenge, which is to show "'that no set of circumstances exists under which the Act would be valid,'" so that the statute would be "'unconstitutional in all of its applications.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (citation omitted). If, as is true, nothing in Tax-General § 7.5-102(c) or the rest of the Digital Advertising Services Gross Revenue Tax Act prevents a taxpayer from saying whatever it wants to say regarding the digital ad tax, and the statute prohibits only the *conduct* of directly passing on the tax as a charge to a customer, then the statute does not even arguably violate the First Amendment "in all of its applications." Even if the statute were construed in the erroneous way plaintiffs parse it, the direct pass-through prohibition still would not be arguably "unconstitutional in all of its applications," because the prohibition would place no burden at all on a taxpayer whose usual mode of operation did not include directly passing various taxes through to its customers and, instead, the taxpayer typically factored such taxes into its prices as part of the cost of doing business.

The importance of the need to satisfy the threshold "unconstitutional in all of its applications" requirement for a facial challenge should not be underestimated. The Fourth Circuit

2

has instructed courts to "consider with caution" facial claims because "'[f]acial invalidation is, manifestly, strong medicine,' and such challenges are disfavored." *West Va. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 300 (4th Cir. 2009) (quoting *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998)). The Fourth Circuit has further emphasized "the disadvantages of facial challenges" that "are present" when, as here, "Plaintiff did not bring this challenge in the context of a specific enforcement action and, more critically, its meat-axe approach has deprived the court of the contextual underpinning that normally informs judicial consideration of statutory and regulatory applications." *Musgrave*, 553 F.3d at 300. Such a challenge asks the Court "to evaluate claims based on speculation and to 'formulate a rule of constitutional law broader than [might be] required by the precise facts to which it is to be applied.'" *Id.* (quoting *Washington State Grange*, 552 U.S. at 450). Moreover, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution," thereby "'frustrat[ing] the intent of the elected representatives of the people." *Musgrave*, 553 F.3d at 300 (quoting *Washington State Grange*, 552 U.S. at 451). For these reasons, "'[a]s-applied challenges are the basic building blocks of constitutional adjudication,'" and "'[a]lthough passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular.'" *Musgrave*, 553 F.3d at 301 (citations omitted).

Here, the speculation and attenuation from any "precise facts," *id.* at 300, are even more pronounced than in other facial challenges, because none of the organizational plaintiffs claim to be subject to the digital ad tax or the direct pass-through prohibition, and they have not alleged or otherwise presented any "precise facts" about any actual taxpayer or how, and to what extent, that entity is affected by the pass-through prohibition. The record here is devoid of specific allegations

or facts concerning the business practices of any companies that are obligated to pay the digital ad tax and abide by the pass-through prohibition, and, consequently, the plaintiffs have failed to provide the Court any means of determining the extent to which the practices of such companies would render them unaffected by the pass-through prohibition in any material respect. Because plaintiffs' allegations and contentions fail to show "'that no set of circumstances exists under which the Act would be valid,'" *Washington State Grange*, 552 U.S. at 449 (citation omitted), they have not satisfied the minimum requirement for prevailing on their "disfavored" facial challenge, *Musgrave*, 553 F.3d at 300. Therefore, the "caution" required of courts in such cases, *id.*, necessitates dismissal of plaintiffs' First Amendment claim.

## II. MARYLAND'S DIRECT PASS-THROUGH PROVISION PROHIBITS ONLY THE CONDUCT OF DIRECTLY PASSING ON THE DIGITAL AD TAX TO A CUSTOMER AND DOES NOT RESTRICT SPEECH.

Plaintiffs incorrectly argue that because the direct pass-through prohibition in Tax-General § 7.5-102(c) "does not prohibit a person . . . from indirectly passing on the cost of the tax . . . by factoring such cost into its customer pricing," ECF 68 at 1, the statute serves no purpose other than "'regulat[ing] how sellers may communicate their prices,'" ECF 70 at 5 (quoting *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1146 (2017)). But that assertion rests on the false premise that there is no meaningful economic difference between "factoring such cost into . . . customer pricing," ECF 68 at 1, which is permitted, and "directly pass[ing] on the cost of the tax imposed . . . to a customer," § 7.7-102(c), which is prohibited. If there were no material difference between the two modes of operation, it is unlikely that any plaintiff would find it worthwhile to pursue expensive federal court litigation to challenge the direct pass-through prohibition in the hope of achieving an economically meaningless result. Of course, the indirect process of "factoring" a tax cost into pricing along with other costs of doing business does differ from directly

passing on the tax to the customer. The two business practices differ both economically, as explained in defendant's supplemental brief, ECF 71 at 5-7, and as a matter of Maryland's legislatively adopted public policy.

In this instance, the prohibition against direct pass-through of the tax cost via "separate fee, surcharge, or line-item," § 7.5-102(c), follows from and reinforces the statutory definition of "annual gross revenues" to include "income or revenue from all sources, before any expenses or taxes. . . .," § 7.5-101(b). Allowing a digital ad service provider to pass on the tax cost directly to customers might result in disguising or underreporting of "annual gross revenues," which the statute requires to be computed before subtracting any taxes. Prohibiting direct pass-through of the digital ad tax also serves to effectuate the balance and fairness the legislature sought to achieve, by ensuring that digital advertising services companies cannot directly "pass the cost of the Digital Ad Tax onto small business consumers," while not rendering "these [digital advertising services] companies unable to profit," but merely "mak[ing] them responsible for their own costs." Written Testimony of Senate President Bill Ferguson in Support of S.B. 787, 2021 Reg. Sess. before the House Ways & Means Comm. 1 (Mar. 25, 2021), available at https://mgaleg.maryland.gov/mgawebsite/Legislation/WitnessSignup/SB0787?ys=2021RS (last visited May 12, 2022). In this way, Tax-General § 7.5-102(c) places companies subject to the digital ad tax on an equal footing with individual taxpayers—few, if any, of whom have ever been able to directly pass on their tax burden to someone else.

The statute adopted by Maryland clearly informs the public as to what conduct constitutes "directly pass[ing] on the cost of the tax," by specifying that the pass-through proscribed is one effected "by means of a separate fee, surcharge, or line-item." § 7.5-102(c). This specification of prohibited conduct does not, as plaintiffs suggest, convert the statute into a restriction of speech.

Rather, it serves to supply the sort of "minimal guidelines" and "reasonable notice of the proscribed conduct" that prevent a statute from being deemed unconstitutionally vague. *Recht v. Morrisey*, __ F.4th __, No. 21-1684, 2022 WL 1233240, at *10 (4th Cir. Apr. 27, 2022) (citation omitted). On the other hand, neither Tax-General § 7.5-102(c) nor any other provision of the Act contains any language prohibiting anyone from "separately stat[ing] the tax," *BellSouth Telecomms, Inc. v. Ferris*, 542 F.3d 499, 500 (6th Cir. 2008), or mentioning any other facts pertinent to the tax, whether on an invoice or anywhere else. Thus, Maryland's statute does not contain anything like the kind of restriction found to implicate First Amendment concerns in both *BellSouth* and *Bloom v. O'Brien*, 841 F. Supp. 277, 278-79 (D. Minn. 1993), on which plaintiffs rely, ECF 70 at 4-5, 10-12.

The balance struck by Maryland legislators is essentially the same as the one adopted by their counterparts in the State of Washington when they enacted a tax pass-through prohibition, which the Supreme Court of Washington upheld against a First Amendment challenge in *Nelson v. Appleway Chevrolet, Inc.*, 157 P.3d at 852-53. There, the statute provided that a tax levied on a business's "'value of products, gross proceeds of sales, or gross income'" "'shall constitute part of the operating overhead of such persons,'" *id.* at 850 (quoting Revised Code of Washington ("RCW") 82.04.500), which the court equated with "simply the aggregate cost of doing business," *id.* at 850. But the legislature forbade the imposition to "be construed as taxes upon the purchasers or customers," *id.* at 850 (quoting RCW 82.04.500), which meant, as in this case, "the legislature simply consider[ed] the B& O tax a cost of doing business," *id.* at 850. Though the Washington statute enabled a taxed business to recover the cost of the tax indirectly by factoring its operating overhead into price determinations, like Maryland's direct pass-through provision, Washington's

statute "prevent[ed] [a business] from passing the tax on to its customers" directly, *id.* at 852, by providing that a business "cannot add a B & O tax to the purchase price," *id*. at 853.

Like Maryland's law, Washington's "sa[id] nothing about disclosure," *id.* at 853, and the plaintiff business was therefore "free to inform [a customer] that $79.23 of his final purchase price would be used to pay for the B & O tax," *Id.* at 852. The court expressly distinguished *Bloom*, 841 F. Supp. 277, on which plaintiffs rely here, because in *Bloom* "[t]he Minnesota Legislature specifically allowed health care tax to be passed through to patients but forbade doctors from informing patients about the tax," whereas Washington's statute, like Maryland's, "says nothing about disclosure." *Nelson*, 157 P.3d at 852-53. In this case, plaintiffs' member companies are similarly "free to inform" their customers of the amount of digital ad services gross revenue tax reflected in the purchase price. Maryland's statute, like Washington's, "is silent about disclosure, and [a taxpaying entity] is free to disclose and itemize any tax or cost," *id.* at 852, so long as it does not directly pass on the cost of the digital ad tax to the customer.

In rejecting the challenge, the Washington court concluded that the First Amendment "will not insulate [a taxpayer's] illegal practice of making customers bear [that taxpayer's] tax burden" by directly "passing the tax on to its customers," *id.* at 852. This Court should reach a similar conclusion.

### III. MARYLAND'S DIRECT PASS-THROUGH PROHIBITION IS NOT A CONTENT-BASED SPEECH RESTRICTION SUBJECT TO STRICT SCRUTINY.

Responding to the arguments in plaintiffs' supplemental brief is a challenging exercise, because the mistaken rendering of Tax-General § 7.5-102(c) that forms the basis of their arguments does not comport with the statute's plain language and legislative intent, and the statute completely lacks the sort of prohibition on disclosure or other speech restriction involved in the cases on which plaintiffs rely. For this and other reasons explained below, the Court can be certain that the

7

content-based speech analysis plaintiffs advocate does not apply to Maryland's pass-through prohibition, and the Court should not engage in strict scrutiny. Maryland's pass-through prohibition regulates conduct, not speech, but if directly charging someone the tax were construed as speech, Maryland's statute would not be subject to strict scrutiny, for at least five reasons.

An initial obstacle to application of plaintiffs' preferred analysis is the problem of whose "speech" is implicated. If imposing a tax on someone by directly passing it on "by means of a separate fee, surcharge, or line-item," Tax-Gen. § 7.5-102(c), were construed to be speech, the "content" would be government speech, because "the law [enacted by the government]—by determining the amount charged—would indirectly dictate the content of that speech," *Expressions Hair Design*¸137 S. Ct. at 1151. And the government—here, the State of Maryland—would be "accountable to the electorate and the political process for its advocacy" of that "speech." *Board of Regents of the Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235 (2000). The mere "fact that private parties take part in the . . . propagation of a message does not extinguish the governmental nature of the message. . . ." *Walker v. Texas Div., Sons of Confederate Veterans, Inc*., 576 U.S. 200, 217 (2015). "When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Id.* at 207 (citation omitted). For these and other reasons, "government statements (and government actions and programs that take the form of speech) do not normally trigger the First Amendment rules designed to protect the marketplace of ideas." *Id.*

Even if it did not involve only government speech, Maryland's pass-through prohibition would not trigger strict scrutiny. First, the pass-through related cases on which plaintiffs rely all involved laws that prohibited stating the tax or some other charge, and that particular component of the law—and only that component—was deemed to be a speech regulation. *Expressions Hair*

8

*Design*, 137 S. Ct. at 1148 (challenged law distinguished "between what a vendor can and cannot tell its customers"); *BellSouth*, 542 F.3d at 506 ("[T]his provision regulates speech, not conduct, as it prohibits providers from 'stat[ing]' the tax on the bill."); *Bloom*, 841 F. Supp. at 278, 282 (statutory scheme allowed "health care providers to pass this tax along to consumers and their insurance companies," but "prohibit[ed] the health care providers from itemizing the cost of the gross revenue tax on invoices"). But in no case did a court conclude that a pass-through prohibition itself regulated speech or implicated the First Amendment. Rather, *BellSouth* expressly rejected a First Amendment challenge to a statute prohibiting "direct collection" of a tax cost from a customer, because that prohibition addressed "non-expressive conduct, not speech, and as a result [was] beyond the protection of the First Amendment." 542 F.3d at 510. Maryland's law contains no provision prohibiting stating the tax or anything about the tax.

Second, in *none* of the pass-through related cases on which plaintiffs rely, including *Expressions Hair Design*, *BellSouth*, and *Bloom*, did the courts subject the challenged laws to content-based speech analysis or strict scrutiny. *Expressions* remanded for the Second Circuit to consider arguments under *Central Hudson*'s intermediate scrutiny/commercial speech rubric and *Zauderer*'s compelled disclosure analysis. *Expressions*, 137 S. Ct. at 1151 (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980), and *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)). The other two lower court decisions, each of which preceded the Supreme Court's decision in *Expressions*, both applied *Central Hudson* analysis and refrained from holding that strict scrutiny applied. *See BellSouth*, 542 F.3d at 505-10; *Bloom*, 841 F. Supp. at 281-83.[1]

---

[1] Another district court decision cited by plaintiffs, *AT&T Corp v. Rudolph*, No. 06-16, 2007 WL 647564 (E.D. Ky. Feb. 27, 2007) (miscited by plaintiffs as an "E.D. Kan." case), should be disregarded because it addressed a First Amendment challenge to the same Kentucky statute

9

Third, recently the Fourth Circuit explained that "the Supreme Court has long made clear that the regulation of commercial speech invokes lessened First Amendment concerns," and "[i]n this area, we accord the State some, though not infinite, leeway in balancing the important state interests against the individual rights involved." *Recht*, 2022 WL 1233240, at *1. After reviewing pertinent Supreme Court precedent, the Fourth Circuit concluded that, in light of these "lessened First Amendment concerns," "[s]trict scrutiny is therefore improper when reviewing laws that regulate commercial speech. Instead, we apply the . . . four-part intermediate-scrutiny analysis from *Central Hudson*." *Id.* at *3. "To be clear: Commercial speech regulations are analyzed under *Central Hudson*." *Id.* at *5. This "clear" instruction from the Fourth Circuit applies even when a plaintiff asserts that a commercial speech regulation is content-based. *Id.* at *4 (noting that Supreme Court precedent has "applied the *Central Hudson* framework to a concededly 'content-based law.'") (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 571 (2011)). In this case, plaintiffs themselves assert that Maryland's pass-through prohibition involves commercial speech.[2] Am. Compl. ¶ 96(b), ECF 25 at 21.

---

that was later reviewed by the Sixth Circuit in *BellSouth*. Unlike the district court's decision, the subsequent decision of the Sixth Circuit is precedential and supersedes conclusions reached by the district court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'") (citation omitted).

[2] If the pass-through prohibition involves speech at all, other than government speech, then it is commercial speech as defined by the Fourth Circuit. *See Wag More Dogs Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 369-70 (4th Cir. 2012) (noting that "*Bolger* [*v. Youngs Drug Prod. Corp.*, 463 U.S. 60 (1983)] recognized a broader definition of commercial speech, encompassing speech that 'cannot be characterized merely as proposals to engage in commercial transactions'"; that *Bolger* itself treated as commercial speech a pamphlet "plainly not falling within 'the core notion of commercial speech'"; and that it "cautioned that it did not 'mean to suggest that each of the characteristics present in this case must necessarily be present in order for speech to be commercial'") (quoting *Bolger*, 463 U.S. at 66, 68, 67 n.14).

Even more pertinent to plaintiffs' content-based argument here, *Recht* expressly rejected an argument based on *Reed v. Town of Gilbert*, 576 U.S. 155 (2015) (on which plaintiffs here primarily rely for their content-based speech argument, *see* ECF 70 at 2-3), because "*Reed* involved a sign code that regulated non-commercial speech," specifically, "ideological signs, political signs, and signs directing the public to nonprofit gatherings," "so it never needed to mention commercial speech or any precedents in that vein." *Recht*, 2022 WL 1233240, at *4 (citing *Reed*, 576 U.S. at 159-61). The Fourth Circuit in *Recht* concluded that the district court erred by applying strict scrutiny, but rather than remand for further consideration, the appellate court applied intermediate scrutiny itself, held that the challenged regulation did not offend the First Amendment, and ordered the case dismissed. 2022 WL 1233240 at *1.

Finally, the Supreme Court has recently instructed courts not to give *Reed* the kind of broad reading that the plaintiffs employ in their supplemental brief. In *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, No. 20-1029, 2022 WL 1177494 (U.S. Apr. 21, 2022), the Supreme Court faulted the Fifth Circuit for "interpret[ing] *Reed* to mean that if '[a] reader must ask: who is the speaker and what is the speaker saying' to apply a regulation, then the regulation is automatically content based." *Id.* at *4. Such a "rule, which holds that a regulation cannot be content neutral if it requires reading the sign at issue, is too extreme an interpretation of this Court's precedent." *Id. City of Austin* further interpreted Supreme Court precedents to constitute "a rejection of the view that *any* examination of speech or expression inherently triggers heightened First Amendment concern." *Id.* at *7 (emphasis in original). *City of Austin* also rejected the notion "that any classification that considers function or purpose is *always* content based." *Id.* (emphasis in original). "Such a reading of 'function or purpose' would contravene numerous precedents. . . . *Reed* did not purport to cast doubt on these cases." *City of Austin* at *7.

If, despite all these reasons to avoid the error committed by the district court in *Recht*, this Court determines to apply strict scrutiny, the pass-through prohibition should survive that test. The State has a compelling interest in being able to exercise it police powers by enacting a tax to fund improvements of public education, and the legislature's ability to regulate tax incidence, such as by way of a pass-through prohibition, is an "incidental power" inherent in the power to tax. *Helvering v. National Grocery Co.*, 304 U.S. 282, 286-87 (1938). As explained above, the direct pass-through prohibition helps ensure the State's ability to determine the correct amount of annual gross revenues, as required by the Act to be computed before any taxes are subtracted, and it serves to ensure that responsibility for paying the tax rests, in the first instance, on the entities that benefit financially from the activity being taxed. Written Testimony of Senate President Bill Ferguson in Support of S.B. 787, at 1. As for whether the pass-through prohibition is narrowly tailored, it would be hard to imagine a more narrowly tailored way to ensure that the tax is borne by the correct taxpayer.

### IV. IF CONSTRUED TO REGULATE COMMERCIAL SPEECH, THE PASS-THROUGH PROHIBITION COULD SATISFY INTERMEDIATE SCRUTINY UNDER CENTRAL HUDSON.

Maryland's law would satisfy intermediate scrutiny because *Central Hudson* makes clear that "[t]he government may ban . . .commercial speech related to illegal activity." 447 U.S. at 563-64. That is, under *Central Hudson*, in order to be protected by the First Amendment, commercial speech "must concern lawful activity." *Id.*, 447 U.S. at 566. "Thus, the first inquiry is whether the speech is unlawful or misleading. If it is either, then the commercial speech is not protected at all by the First Amendment," *American Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004), and no further analysis is required.

This is illustrated by a case plaintiffs cite, *Bloom v. O'Brien*, which addressed this threshold inquiry by stating, "There is no question that passing on to consumers the economic burden of the gross revenue tax is lawful. The statute specifically allows that[.] Minn. Stat. § 295.582." *Bloom*, 841 F. Supp. at 281. But here, unlike *Bloom* where the statute both expressly authorized pass-through and expressly compelled the customer to pay the tax passed through,[3] Maryland's law prohibits "directly pass[ing] on" the digital ad tax, Tax-Gen. § 7.5-102(c), and thereby makes that activity unlawful. Therefore, plaintiffs' challenge cannot survive *Central Hudson*'s threshold inquiry, because Maryland's statute renders unlawful the direct pass-through of the digital ad tax, which is the subject of the commercial "speech" involved in plaintiffs' claim.

Where, as here, that threshold requirement of lawfulness is not met, *Central Hudson* does not call for application of the rest of its analysis, and a court "likely need proceed no further." *Recht*, 2022 WL 1233240, at \*8; *see Central Hudson*, 447 U.S. at 564 (conditioning analysis under its additional factors on a showing that "the communication is neither misleading nor related to unlawful activity"). If, "[o]ut of a sense of caution, however," this Court wishes to "take up the remainder of the *Central Hudson* analysis," *Recht*, 2022 WL 1233240, at \*8, Tax-General § 7.5-102(c) satisfies those factors, as well. The remaining three inquiries are (1) "whether the government interest justifying the Act is 'substantial,'" (2) "whether the Act 'directly advances' [Maryland's] substantial interests," and (3) whether it does so "in a way that is 'not more extensive

---

[3] *See* Minn. Stat. § 295.582, "Pass-through Authority" (1993) ("A hospital, surgical center, or health care provider that is subject to a tax under section 295.52 may transfer additional expense generated by section 295.52 obligations on to all third-party contracts for the purchase of health care services on behalf of a patient or consumer. . . . All third-party purchasers of health care services . . . must pay the transferred expense in addition to any payments due under existing or future contracts . . . . to the extent allowed under federal law.").

than is necessary' to serve those interests." *Recht*, 2022 WL 1233240, at *8 (quoting *Central Hudson*, 447 U.S. at 566).

As already explained above at pages 5 and 12, the direct pass-through prohibition in Tax-General § 7.5-102(c) is justified by the State's substantial interest in ensuring the accurate reporting of annual digital ad services gross revenue, as defined in the Act to require that it be undiminished by any tax costs, § 7.5-101(b), and the State's substantial interest in having the tax borne, in the first instance, not by consumers of digital ad services, but as a cost of the digital ad service providers who benefit financially from the provision of the services and should bear responsibility for externalities resulting from those services. The direct pass-through prohibition "directly advances" these interests by requiring digital ad services providers to absorb the digital ad tax as a cost of doing business. It does so in a way that is "not more extensive than is necessary" to serve those interests, since the statute permits the digital ad tax to be factored into a taxed entity's prices along with its other costs, and the statute contains no provision limiting the ability to communicate the amount of the tax, or any other message a digital ad services providers wishes to convey to its customers. *Central Hudson* does not require that the statute "'employ the least restrictive means conceivable'"; the "'fit between the legislature's ends and the means chosen to accomplish those ends'" need not be "'perfect, but reasonable'"; and "this standard gives the State 'needed leeway in a field (commercial speech) traditionally subject to governmental regulation.'" *Recht*, 2022 WL 1233240, at *9. Section 7.5-102(c) easily satisfies these requirements.

Therefore, the Court should dismiss plaintiffs challenge to Maryland's direct pass-through prohibition.

## CONCLUSION

For the reasons stated above and in defendant's opening memorandum in support of motion to dismiss, ECF 29-1 at 52-54, his reply in support of motion to dismiss, ECF 36 at 40-41, and supplemental brief in support of motion to dismiss, ECF 71, the Court should dismiss plaintiffs' only remaining claim, and plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Julia Doyle Bernhardt
_____
JULIA DOYLE BERNHARDT
Federal Bar No. 25300
jbernhardt@oag.state.md.us

/s/ Steven M. Sullivan
_____
STEVEN M. SULLIVAN
Federal Bar No. 24930
ssullivan@oag.state.md.us
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7291
(410) 576-6955 (facsimile)

/s/ Brian L. Oliner
_____
BRIAN L. OLINER
Federal Bar No. 05780
boliner@marylandtaxes.gov
Assistant Attorney General
80 Calvert Street, Room 303
P.O. Box 591
Annapolis, Maryland 21404
(410) 260-7808

Attorneys for Defendant