## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, ) ) ) | |
| Plaintiffs, ) | Civil Action No. 21-cv-00410-LKG |
| v. ) | Dated:  July 3, 2024 |
| BROOKE LIERMAN, ) | |
| Defendant. ) | |

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

The remaining claim in this case involves a First Amendment facial challenge to the State of Maryland's Digital Advertising Gross Revenues Tax Act, 2021 Md. Laws ch. 37, codified at Title 7.5 of the Tax-General Article (the "DATA"), which has been brought by several trade associations that have members who will be liable for the tax imposed by the DATA.  *See* ECF No. 25.[1]  The Defendant, Brooke Lierman, the Comptroller for the State of Maryland, has moved to dismiss this claim, pursuant to Fed. R. Civ. P. 12(b)(6), upon the ground that Plaintiffs have failed to allege facts to show that they can prevail on their First Amendment facial challenge to the DATA's Pass-Through Prohibition.  *See* ECF Nos. 29, 29-1; *see also* ECF Nos. 71, 72, 81, 86, 115 and 117.  The Plaintiffs have also moved for summary judgment in their favor on this claim, pursuant to Fed. R. Civ. P. 56.  ECF Nos. 31, 31-1; *see also* ECF Nos. 70, 73, 82, 85, 116, 118.

---

[1] On March 30, 2022, the Court dismissed Counts I, II and III of the amended complaint for lack of subject-matter jurisdiction.  ECF No. 67.  On April 4, 2022, Plaintiffs withdrew their Commerce Clause Claim in Count IV of the amended complaint.  *See* ECF No. 68 at 1.  On December 2, 2022, the Court dismissed the First Amendment Claim in Count IV of the amended complaint on mootness grounds.  ECF No. 98.  On January 10, 2024, the United States Court of Appeals for the Fourth Circuit upheld the dismissal of Counts I, II and III of the amended complaint, reversed the Court's decision to dismiss Count IV of the amended complaint and remanded the Plaintiffs' First Amendment claim for further consideration by the Court.  ECF No. 106.

The Court has previously held several hearings on this issue.  ECF Nos. 77, 96.  No additional hearing is necessary to resolve these motions.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons set forth below, the Court: (1) **GRANTS** Defendant's motion to dismiss as to Count IV of the amended complaint; (2) **DENIES** Plaintiffs' motion for summary judgment as to Count IV of the amended complaint; and (3) **DISMISSES** this matter.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.     Factual Background

The remaining claim in this case involves a First Amendment facial challenge to the "Pass-Through Prohibition" contained in the State of Maryland's Digital Advertising Gross Revenues Tax Act, brought by the Chamber of Commerce of the United States of America, NetChoice and the Computer & Communications Industry Association.  *See generally* ECF No. 25, ¶¶ 94-96.  Plaintiffs seek a declaratory judgment declaring that the Pass-Through Prohibition violates the First Amendment and is, thus, unconstitutional, and to enjoin Defendant from enforcing the DATA's Pass-Through Prohibition.  ECF No. 25 at Prayer for Relief.

<u>The Maryland Digital Advertising Gross Revenues Tax Act</u>

As background, the DATA imposes a charge on a digital advertising service provider's annual gross revenues derived from digital advertising services provided in the State of Maryland, if the service provider has at least $100 million in global annual gross revenues.  *See* Md. Code Ann., Tax-Gen. §§ 7.5-102 to -103.  Under the DATA, "'[d]igital advertising services include[] advertisement services on a digital interface, including advertisements in the form of banner advertising, search engine advertising, interstitial advertising, and other comparable advertising services."  *Id*. at § 7.5-101(e)(1).

The tax rate under the DATA is graduated in increments of 2.5%, from 2.5% to 10%, based upon the global annual gross revenues of the business.  *See* Md. Code Ann., Tax-Gen. § 7.5-103.  In this regard, the DATA provides that the "assessable base" is the business's "annual gross revenues derived from digital advertising services in the State [of Maryland]."  *See* Md. Code Ann., Tax-Gen. § 7.5-101(c).  The statute also provides that the assessable base is

---

[2] The facts recited in this memorandum opinion are taken from the amended complaint, and the parties' supplemental briefs.  ECF Nos. 25, 73, 85, 115 and 116.

determined by using an apportionment fraction, based upon the annual gross revenues of the business derived from digital advertising services in Maryland (the numerator) and in the United States (the denominator). *Id*. at § 7.5-102(b)(1). In addition, the DATA requires that "[t]he Comptroller . . . adopt regulations that determine the state from which revenues from digital advertising services are derived." *Id*. at § 7.5-102(b)(2).

In 2021, the Maryland General Assembly adopted certain amendments to the DATA, which: (1) exclude advertising services on digital interfaces owned or operated by a broadcast entity, or news media entity and (2) prohibit a covered taxpayer from directly passing on the cost of the digital ad tax to a purchaser of digital advertising services. *See* 2021 Md. Laws ch. 669, § 1 (S.B. 787) (amending Md. Code Ann., Tax-Gen. §§ 7.5-101 to -102). Relevant to the pending motions, the so-called "Pass-Through Prohibition" in the DATA provides that:

> A person who derives gross revenues from digital advertising services in the State may not directly pass on the cost of the tax imposed under this section to a customer who purchases the digital advertising services by means of a separate fee, surcharge, or line-item.

*See* Md. Code Ann., Tax-Gen. § 7.5-102(c). On April 4, 2022, the parties entered into a stipulation in which they agree that:

> Tax-General § 7.5-102(c) does not prohibit a person who derives gross revenues from digital advertising services in the State from indirectly passing on the cost of the tax imposed under Tax-General § 7.5-102 by factoring such cost into its customer pricing. The cost of the tax is passed on directly only when it is imposed on the customer by means of a "separate fee, surcharge, or line-item."

ECF No. 68 at 1.

The proceeds collected *via* the DATA's charge are distributed to the Blueprint for Maryland's Future Fund. *See* Md. Code Ann., Tax-Gen. § 2-4A-02. This fund is used to pay for a comprehensive package of improvements that are intended to "transform Maryland's education system to world-class student achievement levels." *See* Md. Code Ann., Educ. § 1-301(a). "Proceeds deposited in the Blueprint for Maryland's Future Fund are kept segregated from the Maryland general fund and earmarked for specific educational purposes[.]" ECF No. 25 at 11. The Defendant represents to the Court that the State of Maryland expects the DATA to generate

as much as $250 million in annual revenues to fund the Blueprint for Maryland's Future Fund. ECF No. 29-1 at 25.

<u>The Plaintiffs' First Amendment Claim</u>

In Count IV of the amended complaint, Plaintiffs allege that the DATA's Pass-Through Prohibition violates the First Amendment, because it is a content-based restriction on speech. *See* ECF No. 25, ¶ 96(a); *see also* ECF Nos. 70, 73, 82, 85.  In this regard, Plaintiffs acknowledge that, "if the pass-through prohibition is interpreted to prohibit the targets of the [DATA] from passing on the charge to downstream market participants at all, it regulates conduct."  ECF No. 25, ¶ 95. [3]  But Plaintiffs allege that, "[i]f the [P]ass-[T]hrough [P]rohibition is interpreted to prohibit companies from including a separate fee, surcharge, or line-item on bills, invoices, receipts, or the like to pass on the Act's charge, it is also a content-based regulation of speech."  ECF No. 25, ¶ 96.

In this regard, Plaintiffs allege that including a separate fee, surcharge, or line-item regarding the charge imposed by the DATA on an invoice or bill is "core political speech concerning who bears responsibility for the charge . . . and ultimately the burden of the charge[.]"  ECF No. 25, ¶ 96(a).  Given this, Plaintiffs also allege that "[f]orbidding the direct payers of the charge from including a separate fee, surcharge, or line-item—while at the same time permitting them to raise prices to accomplish the same practical effect—is a suppression of speech that insulates lawmakers from responsibility for the Act."  *Id.*  And so, Plaintiffs contend that the DATA's Pass-Through Prohibition "is not narrowly tailored to serve a compelling state interest."  *Id.*

Alternatively, Plaintiffs contend that, if "the inclusion on an invoice of a separate fee, surcharge, or line-item to recoup the [DATA']s charge" is not "core political speech," it is "commercial speech."  ECF No. 25, ¶ 96(b).  And so, Plaintiffs further contend that the Pass-Through Prohibition violates the First Amendment, because it: (1) "does not regulate misleading or fraudulent speech[;]" (2) "does not directly advance a substantial governmental interest[;]" and (3) "is more extensive than necessary to serve any conceivable interests that it might further."  *Id.*

---

[3] In their supplemental briefs, Plaintiffs assert that a reading of the Pass-Through Prohibition to regulate conduct rather than speech is "no longer a tenable position," given the parties' stipulation.  ECF No. 70 at 7; *see also* ECF No. 73 at 2-3.

To support their First Amendment facial challenge to the DATA's Pass-Through Prohibition, Plaintiffs have proffered the three hypothetical invoices shown below, which they argue would be prohibited under the DATA:

**ACME DIGITAL ADVERTISING**
**INVOICE – February 1, 2022**

January 2022 advertising services: **$900**
**Maryland Digital Advertising Tax recoupment fee: $100**
Total due: $1000

**SMITH & SONS DIGITAL ADVERTISING CO.**
**INVOICE – February 1, 2022**

Total due for January 2022 advertising services: $1000*
**\* Includes a 10% surcharge for the Maryland Digital Advertising Tax, which will be remitted to Comptroller of Maryland pursuant to Md. Tax-Gen. § 7.5-102.**

**DIGITAL MARKETING OF AMERICA**
**INVOICE – February 1, 2022**

Advertising services, 1/1/22 thru 1/31/22: $1000
**Please note: Your total includes a $100 fee to pay the Maryland Digital Advertising Tax.**

ECF Nos. 73 at 3; 85 at 3 (emphasis supplied).  Plaintiffs argue that the text shown in bold in these hypothetical invoices would not be allowed under the Pass-Through Prohibition, and that these hypothetical invoices show that the law violates the First Amendment by restricting content-based speech about the cost of the tax.  ECF Nos. 73, 85.  And so, Plaintiffs request that the Court declare the Pass-Through Prohibition unconstitutional and enjoin the Defendant from enforcing the Pass-Through Prohibition.  ECF No. 25 at Prayer for Relief.

<u>The Litigation History And The Fourth Circuit's Decision</u>

The Court has previously issued two memorandum opinions and orders related to Plaintiffs' claims in this matter.  First, on March 30, 2022, the Court issued a memorandum opinion and order dismissing Counts I, II and III of the amended complaint, which relate to Plaintiffs' Internet Tax Freedom Act, Commerce Clause and Due Process Clause claims (the "March 30, 2022, Decision").  ECF No. 67.  On December 2, 2022, the Court issued a memorandum opinion and order dismissing-as-moot Plaintiffs' First Amendment claim set forth

in Count IV of the amended complaint, without prejudice (the "December 2, 2022, Decision"). ECF No. 98.

Plaintiffs subsequently appealed the Court's March 30, 2022, and December 2, 2022, Decisions to the United States Court of Appeals for the Fourth Circuit.  ECF Nos. 102, 103, 104. On January 10, 2024, the Fourth Circuit issued an opinion affirming-in-part, and vacating-in-part, the judgments of the Court and remanding the case for further proceedings.  ECF No. 106-1.

Specifically, the Fourth Circuit held that the Court erred in dismissing Plaintiffs' First Amendment facial challenge to the DATA's Pass-Through Prohibition on mootness grounds, because this claim is "unquestionably live" since the Maryland Supreme Court has vacated the judgment of the Circuit Court for Anne Arundel County declaring the DATA unconstitutional. ECF No. 106-1 at 15.  Given this, the Fourth Circuit directed the Court to decide whether the Pass-Through Prohibition restrains speech, and if so, whether it passes constitutional muster.  *Id.*

In this regard, the Fourth Circuit held that a First Amendment facial challenge "requires proving that 'no set of circumstances exists under which the Act would be valid[.]'"  *Id.* (quoting *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020)).  The Fourth Circuit also observed that the "sorts of circumstances" contemplated by a facial challenge "are best considered by the district court with the benefit of further fact-finding potentially."  *Id.* (citing *GenOn Mid-Atlantic, LLC v. Montgomery County, MD*, 650 F.3d 1021, 1026 (4th Cir. 2011); *Freed v. Thomas*, 976 F.3d 729, 732 (6th Cir. 2020)).  Lastly, the Fourth Circuit observed that "[a] facial challenge to a statute's constitutionality presents a 'high bar[],' and 'courts must typically take care 'not to . . . speculate about hypothetical or imaginary cases.'"  *Id.* (quoting *Miselis*, 972 F.3d at 530; *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)).  And so, the Fourth Circuit remanded this matter for the Court "to determine whether the [DATA] is unconstitutional in all circumstances."  *Id.*

### B.  Relevant Procedural Background

Plaintiffs commenced this matter on February 18, 2021, and they subsequently amended the complaint on April 30, 2021.  ECF Nos. 1, 25.  On March 30, 2022, the Court issued a memorandum opinion and order: (1) granting-in-part and denying-in-part the Defendant's motion to dismiss the amended complaint; (2) denying-as-moot the Plaintiffs' motion for

summary judgment; and (3) dismissing Counts I, II and III of the amended complaint. ECF No. 67.

On December 2, 2022, the Court issued a memorandum opinion and order: (1) denying-as-moot Defendant's motion to dismiss as to Count IV of the amended complaint; (2) denying-as-moot Plaintiffs' motion for summary judgment as to Count IV of the amended complaint; and (3) dismissing Count IV of the amended complaint without prejudice.

On December 13, 2022, Plaintiffs appealed the Court's March 30, 2022, and December 2, 2022, Decisions. ECF Nos. 102, 103, 104. On January 10, 2024, the Fourth Circuit issued an opinion affirming-in-part, and vacating-in-part the Court's March 30, 2022, and December 2, 2022, Decisions, and remanding the case for further proceedings with regards to Count IV of the amended complaint. ECF No. 106-1.

On March 29, 2024, the parties filed supplemental briefs regarding the meaning of the Pass-Through Prohibition. ECF Nos. 115, 116. On April 8, 2024, the parties filed supplemental responsive briefs. ECF Nos. 117, 118.

These matters having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to

state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### B.      Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, the Court may grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  A dispute is "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*  When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted).  But, the Court may rely only on facts supported in the record. *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings. *See id.*

### C.  First Amendment Facial Challenges

The Supreme Court has held that "[t]he First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see also* U.S. Const., amend. I.  And so, the Government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed*, 576 U.S. at 163.[4]

---

[4] Courts have long recognized a distinction between so-called "content-based" and "commercial" speech. A government regulation of speech is considered "content based," when "the law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 171.  By comparison, commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980).  And so, the Government "must assert a substantial interest to be achieved by restrictions on commercial speech" and "the regulatory technique must be in proportion to that interest." *Id.*

The validity of a statute can be challenged under the First Amendment upon two grounds – facial and as-applied. *See Greater Balt. Cent. for Pregnancy Concerns, Inc. v. Mayor and City Council Balt.*, 721 F.3d 264, 282 (4th Cir. 2013). The Supreme Court and the Fourth Circuit have both held that First Amendment facial challenges are disfavored. *Moody v. NetChoice, LLC*, No. 22-277, 2024 WL 3237685, at \*8, 17 (U.S. July 1, 2024); *see also United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). Notably, the Fourth Circuit has held that "facial challenges 'run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law that is broader than is required by the precise facts to which it is to be applied.' . . . [r]elatedly, facial challenges 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.'" *Miselis*, 972 F.3d at 530 (citing *Wash. State Grange*, 552 U.S. at 451).

When bringing a facial challenge to a statute, a plaintiff may ordinarily sustain its burden by demonstrating "that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep." *Miselis*, 972 F.3d at 530 (internal citations omitted). Under this test, a facial challenge must fail where the statute has a plainly legitimate sweep. *Wash. State Grange*, 552 U.S. at 449 ("Members of the Court . . . all agree that a facial challenge must fail where the statute has a plainly legitimate sweep[.]").[5]

But, "[w]hen a facial suit is based on the First Amendment . . . a different standard applies." *Moody*, 2024 WL 3237685, at \*8. In this regard, the Supreme Court has recently held that:

> [A] plaintiff cannot succeed on a facial challenge unless he "establish[es] that no set of circumstances exists under which the [law] would be valid," or he shows that the law lacks a "plainly legitimate sweep." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Washington State Grange*, 552 U. S., at 449. In First Amendment cases, however, this Court has lowered that very high bar. To

---

[5] While courts have not expressly defined what it means to have "a plainly legitimate sweep" within this context, the Fourth Circuit has held that the Anti-Riot Act has a plainly legitimate sweep, because this federal criminal statute "validly proscribes" efforts to engage in unprotected speech, such as instigating a riot, and unprotected conduct, such as participating in a riot. *See Miselis*, 972 F.3d at 541 (But also observing that the statute "sweeps up a substantial amount of protected activity.").

> "provide[] breathing room for free expression," we have substituted a
> less demanding though still rigorous standard. *United States v.
> Hansen*, 599 U. S. 762, 769 (2023). The question is whether "a
> substantial number of [the law's] applications are unconstitutional,
> judged in relation to the statute's plainly legitimate sweep." *Americans
> for Prosperity Foundation v. Bonta*, 594 U.S. 595, 615 (2021); *see
> Hansen*, 599 U.S., at 770 (likewise asking whether the law "prohibits a
> substantial amount of protected speech relative to its plainly legitimate
> sweep"). So in this singular context, even a law with "a plainly
> legitimate sweep" may be struck down in its entirety. But that is so
> only if the law's unconstitutional applications substantially outweigh
> its constitutional ones.

*Id.*; *see also Miselis*, 972 F.3d at 530 (recognizing that "the fear of chilling protected expression 'has led courts to entertain facial challenges based merely on hypothetical applications of the law to nonparties[,]'" and holding that "a statute 'may be invalidated as overbroad' as long as 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'") (internal citations omitted).

When considering a First Amendment facial challenge, "[t]he proper analysis begins with an assessment of the state laws' scope." *Moody*, 2024 WL 3237685, at *9. And so, before the Court "can do anything else with these facial challenges, it must 'determine what [the law] covers.'" *Id.* at *9 (quoting *United States v. Hansen*, 599 U.S. 762, 770 (2023)). "The next order of business is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id.*; *see also Miselis*, 972 F.3d at 531 (citing *United States v. Williams*, 553 U.S. 285, 297 (2008)) ("We must then determine whether, so construed, the statute 'criminalizes a substantial amount of protected expressive activity.'").

Also relevant to this dispute, several courts have considered whether certain statutes that prohibit imposing a surcharge, or separately stating a tax on a bill, regulate speech. Notably, the Supreme Court held in *Expressions Hair Design v. Schneiderman* that a state statute providing that "[n]o seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means" regulated speech. 581 U.S. 37, 41 (2017) (quoting N.Y. Gen. Bus. Law Ann. § 518 (2012)). In reaching that conclusion, the Supreme Court observed that:

> [The statute] is not like a typical price regulation. Such a regulation—
> for example, a law requiring all New York delis to charge $10 for their
> sandwiches—would simply regulate the amount that a store could

collect. In other words, it would regulate the sandwich seller's conduct. To be sure, in order to actually collect that money, a store would likely have to put "$10" on its menus or have its employees tell customers that price. Those written or oral communications would be speech, and the law—by determining the amount charged—would indirectly dictate the content of that speech. But the law's effect on speech would be only incidental to its primary effect on conduct, and "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."

*Id*. at 47 (internal quotations omitted) (quoting *Rumsfeld v. F. for Acad. and Institutional. Rts., Inc.*, 547 U.S. 47, 62 (2006) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949))). But, the Supreme Court held that that:

[This statute] is different. The law tells merchants nothing about the amount they are allowed to collect from a cash or credit card payer. Sellers are free to charge $10 for cash and $9.70, $10, $10.30, or any other amount for credit. What the law does regulate is how sellers may communicate their prices. A merchant who wants to charge $10 for cash and $10.30 for credit may not convey that price any way he pleases. He is not free to say "$10, with a 3% credit card surcharge" or "$10, plus $0.30 for credit" because both of those displays identify a single sticker price—$10—that is less than the amount credit card users will be charged. Instead, if the merchant wishes to post a single sticker price, he must display $10.30 as his sticker price.

*Id.* at 47.

The United States Court of Appeals for the Sixth Circuit has also held in *BellSouth Telecomms., Inc. v. Farris* that a Kentucky law, providing that "[t]he provider shall not collect the tax directly from the purchaser or separately state the tax on the bill to the purchaser," violated the First Amendment, to the extent that the law prohibited telecommunication providers from identifying a tax on consumers' bills. 542 F.3d 499, 501, 504 (6th Cir. 2008). The Sixth Circuit concluded, however, that the portion of this law that prohibited telecommunication providers from collecting a tax directly from consumers, referred to "non-expressive conduct" and, therefore, did not implicate or violate the First Amendment. *Id.* at 510.

### D. Statutory Construction

Lastly, the Fourth Circuit has held that the first step when interpreting a statute "'is to determine whether the language at issue has a plain and unambiguous meaning' by looking to

'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Orquera v. Ashcroft*, 357 F.3d 413, 418 (4th Cir. 2003) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997)); *see also Am. Acad. Of Pediatrics v. Food & Drug Admin.*, 379 F.Supp.3d 461, 485 (D. Md. 2019) (explaining that to interpret a statute, the Court first looks at the language in the statute and determines whether it has a plain and unambiguous meaning) (quotations omitted).  In this regard, the Supreme Court has held that the "cardinal rule" of plain meaning review is "that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." *Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991)).  And so, the Court must consider the context in which the statutory words are used, because the Court does not construe statutory phrases in isolation.  *See Ayes v. U.S. Dep't of Veterans Affs.*, 473 F.3d 104, 108 (4th Cir. 2006); *see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 559 U.S. 280, 290 (2010) (explaining that "[c]ourts have a duty to construe statutes, not isolated provisions.").

## IV.    LEGAL ANALYSIS

The Defendant has moved to dismiss Plaintiffs' First Amendment facial challenge to the DATA's Pass-Through Prohibition, upon the grounds that: (1) the Pass-Through Prohibition only regulates conduct; (2) to the extent that the Pass-Through Prohibition is construed to regulate speech, Plaintiffs cannot show that no set of circumstances exists under which the law would be valid, that the law lacks any plainly legitimate sweep, or that the Pass-Through Prohibition is overbroad, to prevail on their First Amendment facial challenge; (3) the Pass-Through Prohibition is not subject to strict scrutiny, because it does not restrict content-based speech; and (4) the Pass-Through Prohibition also satisfies intermediate scrutiny, if construed to regulate commercial speech.  ECF Nos. 29, 71, 72, 81, 86.  And so, Defendant requests that the Court dismiss Plaintiffs' First Amendment claim in Count IV of the amended complaint.  ECF No. 29.

Plaintiffs counter that the Court should not dismiss their First Amendment claim, and that they are entitled to summary judgment in their favor on this claim, because: (1) the Pass-Through Prohibition regulates content-based speech and no set of circumstances exists under which the Pass-Through Prohibition would be valid and (2) if construed to regulate commercial speech, the Pass-Through Prohibition also fails to satisfy intermediate scrutiny.  ECF Nos. 31, 70, 73, 82, 85.

And so, Plaintiffs request that the Court deny Defendant's motion to dismiss and grant their motion for summary judgment as to Count IV of the amended complaint.  ECF No. 31.

For the reasons set forth below, the plain language of the DATA's Pass-Through Prohibition shows that this law regulates conduct, to the extent that the Pass-Through Prohibition prohibits "directly passing on the cost of the tax imposed by [the DATA]."  But, the Court reads the Pass-Through Prohibition to regulate protected speech, to the extent that the statute prohibits directly passing the cost of the tax, "by means of a separate fee, surcharge, or line-item."

Plaintiffs have not shown, however, that the Pass-Through Prohibition lacks a "plainly legitimate sweep," or that a substantial number of the statute's applications are unconstitutional, judged in relation to the Pass-Through Prohibition's plainly legitimate sweep, to prevail on their First Amendment facial challenge.  And so, the Court: (1) **GRANTS** Defendant's motion to dismiss Plaintiffs' First Amendment claim in Count IV of the amended complaint; (2) **DENIES** Plaintiffs' motion for summary judgment on this claim; and (3) **DISMISSES** this matter.

### A. The Court Construes The Pass-Through Prohibition To Prohibit Direct Passage Of The Cost Of The Tax Onto The Customer, By Way Of A "Separate Fee, Surcharge, Or Line-Item"

As an initial matter, the Court must begin its analysis of Plaintiffs' First Amendment facial challenge to the DATA's Pass-Through Prohibition by construing the challenged statute. *Moody v. NetChoice, LLC*, No. 22-277, 2024 WL 3237685, at *9 (U.S. July 1, 2024); *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020) (citing *United States v. Williams*, 553 U.S. 285, 293 (2008)).  The Court reads the plain language of the DATA's Pass-Through Prohibition to prohibit a taxpayer from directly passing on the cost of the tax imposed by that statute by means of a "separate fee, surcharge, or line-item" contained in an invoice or bill.

The relevant text of the DATA provides that:

> A person who derives gross revenues from digital advertising services in the State may not directly pass on the cost of the tax imposed under this section to a customer who purchases the digital advertising services by means of a separate fee, surcharge, or line-item.

Md. Code Ann., Tax-Gen. § 7.5-102(c).  The Court finds this language to be plain and unambiguous.  *Orquera v. Ashcroft*, 357 F.3d 413, 418 (4th Cir. 2003); *Am. Acad. Of Pediatrics v. Food & Drug Admin.*, 379 F.Supp.3d 461, 485 (D. Md. 2019).

The Court reads the statute's use of the word "directly," within the context of the requirement that a taxpayer "may not directly pass on the cost of the tax imposed by [the DATA]," to mean that a taxpayer cannot pass on the cost of the tax "in a straightforward manner." *Directly*, Black's Law Dictionary (11th ed. 2019). The Court also reads the word "pass" in this statute to mean "to transfer or be transferred." *Pass*, Black's Law Dictionary (11th ed. 2019). And so, the Court reads the Pass-Through Prohibition to prohibit a taxpayer from directly passing on or transferring the cost of the tax imposed by the DATA to a customer. Md. Code Ann., Tax-Gen. § 7.5-102(c).

The Court also reads the DATA's Pass-Through Prohibition to specify the manner in which the cost of the tax imposed by the statute cannot be directly passed on to a customer. In this regard, the statute makes clear that a taxpayer cannot directly pass on the tax, "to a customer . . . by means of a separate fee, surcharge, or line-item." Md. Code Ann., Tax-Gen. § 7.5-102(c). The Court reads the phrase "by means of" in this statute to mean "through the use of." *By Means Of*, MerriamWebster.com, https://www.merriam-webster.com/dictionary/by%20means%20of (last visited July 3, 2024); *see also Means*, Black's Law Dictionary (11th ed. 2019) (defining "means" to be "an instrument" or "something that helps to attain an end"). The Court also reads the word "separate" to mean "set or kept apart" and the words "fee," "surcharge" and "line-item" to mean to the costs or charges that are contained in, or included on a financial statement, bill, or invoice. *See Separate*, MerriamWebster.com, https://www.merriam-webster.com/dictionary/separate (last visited July 3, 2024); *see also Fee*, Black's Law Dictionary (19th ed. 2019) (defining "fee" as a "charge or payment for labor or services"); *Surcharge*, Black's Law Dictionary (19th ed. 2019) (defining "surcharge" as an "additional tax, charge or cost"); *Line-Item*, Black's Law Dictionary (19th ed. 2019) (defining "line-item" as "a single entry or notation to which a particular dollar amount is attached," typically on "a financial statement").

The Court's reading of the Pass-Through Prohibition is consistent with the parties' reading of this statute. Notably, the parties in this matter stipulate that:

> [The DATA's Pass Through-Prohibition] does not prohibit a person who derives gross revenues from digital advertising services in the State from indirectly passing on the cost of the tax imposed under Tax-General § 7.5-102 by factoring such cost into its customer pricing. The cost of the tax is passed on directly only when it is imposed on the customer by means of a "separate fee, surcharge, or line-item."

ECF No. 68.  And so, the Court reads the DATA's Pass-Through Prohibition to prohibit a taxpayer from directly passing on the cost of the DATA's tax to its customers, by stating the amount of the cost of the tax in a "separate fee, surcharge, or line-item" contained in a customer bill or invoice.

### B.   The Statute's Prohibition Of Passing On The Cost Of The Tax "By Means Of A Separate Fee, Surcharge, Or Line-Item" Restricts Speech

Having construed the language of the Pass-Through Prohibition to prohibit a taxpayer from directly passing on the cost of the DATA's tax to its customers, by stating the amount of the cost of the tax in "separate fee, surcharge, or line-item" in a customer bill or invoice, the Court must next determine whether this statute restrains speech.  ECF No. 106-1 at 15 ("The district court in the first instance should decide whether the pass-through provision restrains speech and, if so, whether it passes constitutional muster."); *see also United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020) (the Court must "determine whether, so construed, the statute 'criminalizes a substantial amount of protected expressive activity.'") (internal citation omitted). In this regard, both the Supreme Court and the United States Court of Appeals for the Sixth Circuit have considered whether statutes that are quite similar to the DATA's Pass-Through Prohibition restrain speech.  Notably, in *Expressions Hair Design v. Schneiderman*, the Supreme Court held that that a state statute which provided that "[n]o seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means" regulates speech, because the statute regulated how sellers may communicate their prices.  581 U.S. 37, 41 (2017) (quoting N.Y. Gen. Bus. Law Ann. § 518 (2012)).  In this regard, the Supreme Court found that the statute at issue in *Expressions Hair Design* regulated "how sellers may communicate their prices, . . . [so that a] merchant . . . may not convey that price any way he pleases."  *Id.* at 47.

The Sixth Circuit has similarly held that a Kentucky law, which provides that "[t]he provider shall not collect the tax directly from the purchaser or separately state the tax on the bill to the purchaser," violated the First Amendment, to the extent that the statute prohibited telecommunications providers from identifying a tax on consumers' bills.  *BellSouth*, 542 F.3d at 501, 504.  Notably, the Sixth Circuit found that the statute's requirement that the provider not "separately state the tax on the bill to the purchaser" violated the First Amendment, to the extent that this requirement prohibits the provider from identifying the tax on a consumer's bill.  *Id.*

But, the Sixth Circuit also found that the portion of this law that prohibited telecommunication providers from collecting the tax directly from their consumers regulated "non-expressive conduct" and, thus, did not implicate or violate the First Amendment. *Id.* at 510.

In this matter, the Court reads the DATA's Pass-Through Prohibition to regulate and restrain speech, to the extent that the statute prohibits passing on the DATA's tax "by means of a separate fee, surcharge or line-item." The Court observes as an initial matter that the Defendant persuasively argues that the statute's prohibition of directly passing on the cost of the DATA's tax regulates non-expressive conduct. Indeed, the DATA's Pass-Through Prohibition regulates the conduct of directly passing on the cost of the tax to consumers. *See BellSouth*, 542 F.3d at 511. And so, the portion of the Pass-Through Prohibition that prohibits a taxpayer from directly passing on the cost of the DATA's tax does not implicate or violate the First Amendment. *See id.* (determining that barring practice of direct-collection only regulates conduct).[6]

The statute's requirement that the cost of the DATA's tax cannot be directly passed on "by means of a separate fee, surcharge, or line-item" is, however, more problematic within the context of the First Amendment. As discussed above, the Court reads the Pass-Through Prohibition to prohibit a taxpayer from directly passing on the cost of the DATA's tax "by means of a separate fee, surcharge or line-item." Md. Code Ann., Tax-Gen. § 7.5-102(c). As Plaintiffs persuasively argue, this requirement restricts speech, because the Pass-Through Prohibition places restrictions on how a taxpayer can communicate to its customers about the tax. *Expressions Hair Design*, 581 U.S. at 47.

In other words, a taxpayer who is subject to the DATA's tax is not free to convey its prices for digital advertising services in any way that it pleases. *Id.* And so, the Court agrees with Plaintiffs that the Pass-Through Prohibition implicates the First Amendment, to the extent that this statute regulates *how* a taxpayer may communicate its prices to a customer. *Id.*

---

[6] To the extent that the Pass-Through Prohibition restricts protected speech, that speech can be best categorized as commercial speech, because any statement regarding the cost of the DATA's tax provided *via* "a separate fee, surcharge or line-item" is an "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980); *BellSouth*, 542 F.3d at 504 (acknowledging that the law at issue could be read to primarily regulate commercial speech that deals with the economic interests of the customers and taxpayers); *but see Bloom v. O'Brien*, 841 F. Supp. 277 (D. Minn. 1993) (noting that a prohibited line-item "may well be construed as a political statement about the law as well as a commercial statement about what is owed."). Notably, the Pass-Through Prohibition does not prohibit a taxpayer from expressing views about the tax, stating the fact of the tax, or explaining the effect of the tax on pricing.

**C.  The Plaintiffs Have Not Shown That The Statute Is Facially Unconstitutional**

While Plaintiffs have shown that the Pass-Through Prohibition restricts protected speech, to the extent that the statute prohibits directly passing on of the cost of the tax "by means of a separate fee, surcharge or line-item," Plaintiffs have not met their burden to show that "a substantial number of [the Pass-Through Prohibition's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Moody v. NetChoice, LLC*, No. 22-277, 2024 WL 3237685, at *8 (U.S. July 1, 2024); *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020).

To prevail on their First Amendment facial challenge to the DATA's Pass-Through Prohibition, Plaintiffs must show that "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Moody,* 2024 WL 3237685, at *8; *see also United States v. Hansen*, 599 U.S. 762, 770 (2023); *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 615 (2021).  In this regard, the Supreme Court has recognized that:

> [Within] this singular context [of a First Amendment facial challenge], even a law with 'a plainly legitimate sweep' may be struck down in its entirety. But that is so only if the law's unconstitutional applications substantially outweigh its constitutional ones.

*Moody*, 2024 WL 3237685, at *8; *see also Miselis*, 972 F.3d at 530 (recognizing that "the fear of chilling protected expression 'has led courts to entertain facial challenges based merely on hypothetical applications of the law to nonparties[,]'" and holding that "a statute 'may be invalidated as overbroad' as long as 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'") (internal citations omitted).

When considering Plaintiffs' First Amendment facial challenge in this case, the Court begins its analysis "with an assessment of the state laws' scope."  *Moody*, 2024 WL 3237685, at *9.  And so, as discussed above, the Court has interpreted the plain language of the Pass-Through Prohibition, to "determine what [the law] covers.'" *Id*. (quoting *Hansen*, 599 U.S. at 770).

"The next order of business is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id*. at *9; *see also Miselis*, 972 F.3d at 531

("We must then determine whether, so construed, the statute 'criminalizes a substantial amount of protected expressive activity.'") (internal citation omitted).  And so, the Court turns to this step to resolve Plaintiffs' First Amendment claim here.

Applying these principles, the Court first observes that Plaintiffs argue without persuasion that the DATA's Pass-Through Prohibition lacks any plainly legitimate sweep.  As Defendant explains in her briefs, the DATA has a plainly legitimate sweep, because the State of Maryland unquestionably possesses the power to levy taxes.  ECF No. 72 at 14.[7]  Defendant also persuasively argues that the DATA advances the State's interest in exercising the power to levy taxes, so that the State can generate revenue to fund improvements to public education from the funds generated through the tax.  *Id.*  In this regard, it is undisputed that the proceeds collected *via* the DATA's tax are distributed to the Blueprint for Maryland's Future Fund, which is used to pay for a comprehensive package of improvements that are intended to "transform Maryland's education system to world-class student achievement levels."  ECF No. 29-1 at 7; *see also* Md. Code Ann., Tax-Gen. § 2-4A-02; Md. Code Ann., Educ. § 1-301(a).  The State of Maryland expects the DATA to generate as much as $250 million in annual revenues to fund the Blueprint for Maryland's Future Fund.  ECF No. 29-1 at 25.

The record before the Court also makes clear that Plaintiffs have not met their burden to show that a substantial number of the Pass-Through Prohibition's applications are unconstitutional, when judged in relation to the statute's plainly legitimate sweep for several reasons.  First, the degree of protected speech implicated by the DATA's Pass-Through Prohibition is not substantial.  As discussed above, the portion of the statute that prohibits directly passing on the cost of the tax imposed by the DATA does not restrict speech.

The Court also observes that the record in this matter with regards to how the Pass-Through Prohibition would apply to Plaintiffs' members is not voluminous.  While Plaintiffs do put forward three hypothetical invoices, that they argue are among "countless examples" of how the statute as applied is unconstitutional, the record before the Court lacks precise facts about

---

[7] Plaintiffs' argument that they can prevail on their First Amendment facial challenge, because they have shown that the Pass-Through Prohibition restricts content-based speech is unpersuasive.  ECF No. 73 at 4. Plaintiffs must show that there are a substantial number of applications of the Pass-Through Prohibition that are unconstitutional, when judged in relation to its plainly legitimate sweep, to prevail on a First Amendment facial challenge to the statute.  *Moody*, 2024 WL 3237685, at *8; *Miselis*, 972 F.3d at 530.

how the law would actually apply to Plaintiffs' members.  ECF No. 73 at 3; ECF No. 72 at 5; ECF No. 86 at 6.

The Defendant has also shown that there are many applications of the Pass-Through Prohibition that are constitutional.  For example, the statute does not prohibit a taxpayer from expressing its views or opinions about the tax imposed by the DATA in an invoice or bill, or otherwise.  ECF No. 71 at 3 ("The [P]ass-[T]hrough [P]rohibition, as set forth in § 7.5-102(c) . . . does not purport to impose any restriction on what the taxpayer may say to the customer, or anyone else, about the tax cost or any other subject.").  Nor does the statute restrict or prohibit a taxpayer from communicating that an invoice or bill is for a higher amount, due to the imposition of the DATA's tax.  ECF No. 72 at 3 ("But, unlike statutes challenged in the cases on which plaintiffs rely, Maryland's statute does not prevent persons subject to the tax from conveying any information they might choose to communicate to a customer. So long as the taxpayer does not 'directly pass on the cost of the tax imposed . . . to a customer . . . by means of a separate fee, surcharge, or line-item,' Md. Code Ann., Tax-Gen. § 7.5-102(c), the statute places no limitations or constraints on what the taxpayer can communicate about the tax, whether it be stating the amount of digital ad tax or expressing any views the taxpayer might have about the tax.").

There is similarly no restriction on speech under the statute when a taxpayer does not directly pass on the tax cost to its customer.  *Id.*  A taxpayer can communicate the amount of the tax and the fact that the cost of the tax is factored into the amount charged to the customer to its customer.  *Id.*  In fact, the parties' stipulation regarding the Pass-Through Prohibition makes clear that the statute "does not prohibit a person who derives gross revenues from digital advertising services in the State from indirectly passing on the cost of the tax imposed under Tax-General § 7.5-102 by factoring such cost into its customer pricing."  ECF No. 68 at 1.

By comparison, the hypothetical invoices put forward by Plaintiffs do not show that a substantial number of the applications of the Pass-Through Prohibition are unconstitutional. Plaintiffs argue that these hypothetical invoices would violate the DATA's Pass-Through Prohibition, because they contain either: (1) a line-item showing a DATA "recoupment fee," (2) a statement that the invoice includes a surcharge for the tax imposed by the DATA, or (3) a statement that the total includes a $100 fee to pay the cost of the tax imposed by the DATA. ECF Nos. 73, 85. But, the fact that these invoices would violate the DATA and arguably restrict protected speech, alone, is not sufficient to show that a *substantial* number of the statute's

applications are unconstitutional.  The Court observes that Plaintiffs maintain that their hypothetical invoices are "among countless examples" of how the statute would be unconstitutional as applied.  ECF No. 73 at 3.  But the record before the Court, and the plain reading of the Pass-Through Prohibition, does not support Plaintiffs' argument.

Rather, as discussed above, the record before the Court and the text of the DATA's Pass-Through Prohibition make clear that there are many applications of this statute that would be constitutional and would not implicate the First Amendment.  At bottom, the statute's unconstitutional applications do not substantially outweigh its constitutional ones.  For this reason, Plaintiffs have not shown that they can prevail on their First Amendment facial challenge to the DATA's Pass-Through Prohibition.  And so, the Court must GRANT the Defendant's motion to dismiss Plaintiff's First Amendment claim set forth in Count IV of the amended complaint and DENY Plaintiffs' motion for summary judgment on this claim.

## V.    CONCLUSION

In sum, the DATA's Pass-Through Prohibition restricts protected speech, to the extent that this statute requires that a covered taxpayer not directly pass on the cost of the tax imposed by the DATA, "by means of a separate fee, surcharge, or line-item."  But Plaintiffs have not met their burden to show that a substantial number of the Pass-Through Prohibition's applications are unconstitutional, when judged in relation to the statute's plainly legitimate sweep, to prevail on their First Amendment claim.  And so, for the foregoing reasons, the Court:

   (1) **GRANTS** Defendant's motion to dismiss Count IV of the amended complaint;

   (2) **DENIES** Plaintiffs' motion for summary judgment as to Count IV of the amended complaint; and

   (3) **DISMISSES** this matter.

A separate Order shall issue.


**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
